In re Estate of Julian: Department of Taxation, Appellant, *v.* Argus et al., Exrs., et al., Appellees.

(No. 7588—Decided June 30, 1952.)

*Mr. C. Wm. O'Neill,* attorney general, and *Mr. J. M. Burtch, Jr.,* for appellant.

*Mr. Edward J. Dempsey, Jr.,* and *Mr. Harley S. Hamilton,* for appellees.

*Per Curiam.* Gertrude E. M. Julian, having transferred certain property to The National City Bank of New York on January 7, 1926, in trust for certain purposes, reserving the power to amend the trust instrument, exercised that power on the 16th day of March 1949, by amending Article I of the trust agreement. She died on March 25, 1949, testate, and her will was duly admitted to probate in Hamilton county, Ohio, on April 7, 1949.

We are not advised as to the terms of her will.

From the application for determination of inheritance tax and the entry fixing the inheritance tax, we learn that the net market value of her estate was $667,114.71. Of this estate, there are five beneficiaries receiving a total of $23,133, clearly subject to inheritance tax, and so charged by the Probate Court. The residue of the estate was divided among 13 institutions, all of which were held exempt from the inheritance tax.

The Department of Taxation of Ohio excepted to the exemption from taxation of the succession of $196,-699.90 to The American Humane Society and a succession of the same amount to the Archdiocese of Cin-

cinnati. No exception was taken to the exemption of The American Red Cross. We are not advised by the record as to the basis of its exemption from the succession tax. We assume that the department was convinced that their purpose was exclusively public charity.

The Probate Court overruled these exceptions and certified the original determination to the auditor of Hamilton county. It is from that order that this appeal was taken.

It appears from the bill of exceptions (the certificate to which, however, is not signed by the trial judge) that at the hearing the Department of Taxation abandoned its exception to the exemption of the succession of The American Humane Society. No contention is made on this appeal that such succession is taxable. That reduces the controversy to the issue of whether the gift to the Archdiocese of Cincinnati is subject to inheritance tax. The executors of the estate and the archdiocese contend that it is exempt under the provisions of Section 5334, General Code, and that the Probate Court did not err in so holding. On the other hand, the Department of Taxation contends that the purpose of the gift is so broad that the fund could be dedicated to nonexempt purposes, precluding the application of the exemption provisions of Section 5334, General Code. To be specific, the department's contention is that the exemption applies only to public charity, whereas the trust purpose is not so limited, and would permit the use of the fund for religious purposes, which are not exempt. That section, in part, provides:

"The succession to any property passing to or for the use of the state of Ohio, or to or for the use of a municipal corporation or other political subdivision thereof for exclusively public purposes, or public institutions of learning or any public hospital not for

profit, within this state, or institutions of learning or any public hospital not for profit within any state of the United States, which state does not impose an inheritance, estate or transfer tax on property given, devised or bequeathed by a resident thereof to an institution of learning, or any public hospital not for profit, within this state, or to or for the use of an institution for purposes only of public charity, carried on in whole or in substantial part within this state, or to an institution or organization not for profit and for the exclusive purpose of printing and distributing the Holy Bible, shall not be subject to the provisions of the preceding sections of this subdivision of this chapter.''

In the trust agreement, the testatrix, after providing that all taxes of every description should be paid out of the principal of her estate, and that there should be no apportionment of any part of such payment among the gifts, and after making certain specific gifts, some of which were exempt from and some subject to the inheritance tax, proceeded to dispose of the residue as follows:

''(1) One-third thereof to The American Humane Association, Albany, New York, to be used by it for the benefit of animals.

''(2) One-third thereof to The American National Red Cross of Washington, D. C., to be used by it for its general purposes.

''(3) One-third thereof to the Archdiocese of Cincinnati, in the state of Ohio, an unincorporated religious society, and the Roman Catholic Archbishop of Cincinnati and his successors in office, title and trust, as trustees for said archdiocese, to be used for the support and furtherance of such charitable, benevolent, scientific and educational works and activities of said archdiocese as may be desiginated by said archbishop of Cincinnati, his successors in office, title and trust, as such trustee.

"If at the time of the settlor's death only two of said three charitable organizations shall be in existence and able and willing to accept the gift above made in this subdivision (h), said trustee shall transfer, pay over and distribute said rest, residue and remainder of said principal to such two organizations in equal shares, that is to say one-half thereof to each of them.

"If at the time of the settlor's death only one of the three charitable organizations above named in this subdivision (h) shall be in existence and able and willing to accept the gift above made in this subdivision (h) said trustee shall convey, transfer and pay over the whole of said rest, residue and remainder of said principal to that one.

"If none of said three charitable organizations shall then be in existence and able and willing to accept the gift above made in this subdivision (h), then said trustee shall distribute said principal to and among such charitable corporations and/or purposes * * * and in such shares, amounts and proportions, as said trustee may in his absolute discretion deem proper. The determination of said trustee in this regard shall be binding and conclusive upon all persons and corporations having or claiming to have any interest in this trust fund, and shall fully protect said trustee with respect to any action taken by it pursuant to such determination. Without in any way limiting the absoluteness of the discretion thus conferred upon said trustee, the settlor requests that in selecting the charitable corporations and/or purposes to which said principal shall be distributed, said trustee shall endeavor to make such distribution in such manner as in its judgment will most nearly serve to carry out the general charitable objects of the settlor, as above expressed in this subdivision (h), and that approximately one-third thereof be devoted to promoting humane treatment of animals, that approximately one-third thereof be de-

voted to purposes similar to some part of the work now done by the Red Cross, and that approximately one-third thereof be devoted to support and furtherance of charitable, benevolent, scientific and educational works and activities in the area now embraced within the Archdiocese of Cincinnati. Without limiting the absoluteness of the discretion above conferred upon the trustee by this paragraph the settlor requests the trustee to give consideration to the advisability of distributing some part of the fund to American Friends Service Committee, of Philadelphia, Pa., to be used by it for its general activities in the United States.''

There were other provisions explanatory of her reasons for not making any relative a beneficiary, followed by her declaration that ''her chief interest is in charity.''

It will be noted that this gift is to the Archdiocese of Cincinnati, in the state of Ohio, an unincorporated religious society, and the Roman Catholic Archbishop of Cincinnati and his successors in office as trustee for said archdiocese ''to be used for the support and furtherance of such charitable, benevolent, scientific and educational works and activities of said archdiocese as may be designated by said archdiocese.''

We are of the opinion that the fact that the trustee of this fund is the archbishop of the archdiocese has some significance in determining the meaning of the words declaring the purpose of the trust, at least to the extent of limiting it territorially. It is true that the archdiocese is simply a geographical term indicating the boundaries within which the objects of the decedent's bounty were to be applied, but it is also true that within the territory the archbishop administers to the religious, spiritual, and bodily welfare of the parishioners therein located. There is no limitation by virtue of his occupancy of the position of archbishop

that would preclude the occupant of that position from accepting this trust and executing it in strict accordance with the intent of the creator of the trust as expressed in the trust instrument. However, we do not conceive, and it is not claimed, that the manifold activities of the archbishop in other relations overrides or qualifies the trustor's purpose, albeit his qualification to carry out that purpose was without doubt the reason for his selection.

Counsel agree that a gift to a church would be subject to an inheritance tax. Therefore, the fact that the trustee is the archbishop of the archdiocese, certainly is no basis for exemption. Neither is it a basis for imposing a tax. It is the purpose of the decedent that is decisive. Her declared purpose was to create a trust for the support of such charitable, benevolent, scientific, and educational works and activities of the archdiocese as might be designated by the archbishop.

It seems to be agreed that if this purpose establishes an exemption under Section 5334, General Code, it must be under the provision exempting successions to "public charity" only.

On behalf of the Department of Taxation it is contended that the purpose is broader and narrower than public charity only in the following respects:

(1) It permits the use of the fund for such charitable purposes as the archbishop may in his unfettered discretion select, limited only by the requirement that the object shall be within the archdiocese, thereby authorizing private as well as public charity; and (2) it also authorizes the use of the fund for any charitable purpose which includes religious purposes, the succession for which are not exempt from taxation under Section 5334, General Code.

In passing upon these claims, we believe it is agreed that as uniformity in taxation is the just and equitable rule, and, therefore, the general rule to be striven for,

all departures therefrom must be strictly construed and no exemption from taxation can be claimed in the absence of a clear enactment to that effect. In 51 American Jurisprudence, 503, Section 495, it is said:

"It is the general policy of the law to make all taxable property share the common burden of taxation, and any claim for exemptions asserted by the owner, other than a public governmental body, must rest upon some definite provision of law granting him a tax exemption, and must be made in the advancement of the interests of the whole people. The presumption is against any grant of tax exemption, and any grant, whether by contract or by statute, is to be strictly construed against the taxpayer; the burden is upon him to point out a valid provision of the law supporting his claim. The law does not imply the tax exemption in favor of a private owner." *Ib.*, 522.

And, at 526, Section 524, the rule for construing exemptions is stated as follows:

"The fundamental theory of the tax structure of the several states is that all taxable property should bear its fair share of the cost and expense of government * * *. When the statute purports to grant an exemption from taxation, the universal rule of construction is that the tax exemption provision is to be construed strictly against the one who asserts the claim of exemption * * *."

Reverting to Section 5334, General Code, as containing the exception to the general rule of taxability of successions to property, provided by Section 5332, General Code, let us consider its terms in the light of this statutory rule of interpretation.

The language is: "An institution for purposes only of public charity." It is urged that this gift comes within that description. That this gift is for a charitable purpose is conceded by the Department of Taxation. That it is for purposes only of public charity is

denied. Now what is meant by public charity? In 10 American Jurisprudence, 588, Section 5, it is said that "A public charity is one in which there is a benefit to be conferred on the public at large, or some portion thereof, or upon an indefinite class of persons." The fact that it is for the benefit of a class does not destroy its public character "as long as the classification is determined by some distinction which involuntarily affects or may affect any of the whole people, although only a small number may be directly benefited." *Ib.*, 589, Section 5. That is the requirement as to the public nature of the charity exempted by Section 5334, General Code.

Now what about the purpose? It must be for charity. It is conceded that the term as used in Section 5334, General Code, does not include religious purposes, and it would seem that the express provision exempting from taxation successions to institutions not for profit, and for the exclusive purpose of printing and distributing the Holy Bible would lend color to that interpretation.

So much for the statutory rule.

Now, reverting to the terms of the trust instrument, let us consider whether the trust thereby created answers the statutory description of the succession that is exempted from the inheritance tax.

The gift is to the archdiocese and Roman Catholic Archbishop of Cincinnati, as trustee, and the draftsman expressly described the archdiocese as "an unincorporated religious society," thereby making it clear that the decedent was conscious of the religious character of the society selected by her to administer her benefaction. She then specifically stated the purpose to be for the support and furtherance of such "charitable, benevolent, scientific and educational works and activities of said archdiocese as may be designated by said Archbishop of Cincinnati."

(1) Is this language of the trust instrument broad enough to satisfy the requirement that the charity to be exempt must be public? In construing the language of the trust instrument on this subject, it seems to us that the character and customary activities of the trustee in administering charities must be taken into consideration. She knew of the methods pursued in the archdiocese. She knew that the archbishop could not as such archbishop bestow charity without having regard to the broad principles of universal benevolence thereby promoting the general welfare and excluding all considerations that are personal and private. She must be taken to have known that these were bestowed upon an indefinite number of persons, without regard to race, color, religion, or condition, limited only to those within the 19 counties of southwestern Ohio embraced within the archdiocese.

It seems to us that the objects of the trust construed in the light of the functions of the archbishop are broad enough to bring the charity within the meaning of public, as that term is used in Section 5334, General Code. Thus construed, it provides for infiltration into the class of beneficiaries of all those within the archdiocese found to be in need of charity. It seems to us that any deviation from that basis of administration would be a violation of the spirit and intent of the creator of the trust.

(2) We now come to a more critical analysis of the language declaring the purposes of this trust. They are four—charitable, benevolent, scientific, and educational. No contention is made that the last three purposes would prevent exemption from the inheritance tax, but it is strongly urged that the first purpose—charitable—includes religious activities and, that, for that reason, the general rule of taxability must be applied. So the problem finally resolves itself into a determination of the meaning of the word, "chari-

table," as used in this instrument. In defining a charity, it is said in 10 American Jurisprudence, 585, Section 3, that "* * * the most comprehensive and carefully drawn definition is that it is a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government."

Perhaps the Restatement is the most authoritative work on the subject of trusts. In 2 Restatement of the Law of Trusts, Section 368, it is stated:

"Charitable purposes include

"(a) the relief of poverty;

"(b) the advancement of education;

"(c) the advancement of religion;

"(d) the promotion of health;

"(e) governmental or municipal purposes;

"(f) other purposes the accomplishment of which is beneficial to the community."

In determining the meaning of this trust, we are admonished by all the authorities that it should be strictly construed and its meaning not enlarged by implication. It must be clear that the tax exemption is required before it is allowed. In the light of this rule, it seems to us we must hold that this succession is subject to the inheritance tax. The ordinary meaning of charitable includes the religious purpose. We find no language restricting that meaning. On the contrary, it seems to us that the selection of the archdiocese and the archibishop and his successors in trust as the trustee and the express description of the trustee as a religious society militates against any inter-

pretation excluding religion from the charitable purpose.

For these reasons, we hold that the succession is subject to the inheritance tax.

The judgment is therefore reversed, and the cause is remanded for further proceedings according to law.

*Judgment reversed.*

HILDEBRANT, P. J., and MATTHEWS, J., concur.