Taft, J.
The question to be decided is whether the words “purposes only of public charity” as used in Section 5334, General Code (Section 5731.0.9, Revised Code), include religious purposes. The Department of Taxation, appellee herein, contends that they do not and that, since The Salvation Army is an institution not only for what appellee concedes are purposes of public charity but also for religious purposes, it is not an “institution for purposes only of public charity” within the meaning of that statute and therefore it is not entitled to the tax exemption sought.
In our opinion, previous decisions of this court have established the following propositions:
1. That charitable purposes include religious purposes. Sowers v. Cyrenius, 39 Ohio St., 29, 48 Am. Rep., 418; Cullen v. Schmit, 139 Ohio St., 194, 39 N. E. (2d), 146; Cleveland Bible College v. Board of Tax Appeals, 151 Ohio St., 258, 85 N. E. (2d), 284; Hubbard Press v. Glander, Tax Commr., 156 Ohio St., 170, 101 N. E. (2d), 382; American Committee of Rabbinical College of Telshe, Inc., v. Board of Tax Appeals, 156 Ohio St., 376, 102 N. E. (2d), 589; Goldman, a Taxpayer, v. Friars Club, 158 Ohio St., 185, 107 N. E. (2d), 518.
2. That an institution organized and conducted for charitable purposes is an institution for purposes of public charity if its benefits are open and available to the public generally. Gerke, Treas., v. Purcell, 25 Ohio St., 229; American Committee of Rabbinical College v. Board of Tax Appeals, supra (156 Ohio St., 376).
3. That, if the benefits of an institution organized and conducted for religious and other charitable purposes only are open find available to the public generally, such institution is an “institution for purposes only of public charity.” Davis, Aud., *53 v. Cincinnati Camp Meeting Assn., 57 Ohio St., 257, 49 N. E., 401; Little, Treas., v. United Presbyterian Theological Seminary, 72 Ohio St., 417, 74 N. E., 193.
Before referring in more detail to some of the foregoing decisions and to other authorities to the same effect, it will be helpful to consider the origin of the statutory words “institution for purposes only of public charity.” This is especially so since some of those decisions involved the construction of similar but not identical words formerly in the Constitution of Ohio.
An inheritance tax was first enacted in Ohio in 1893. In 1900, for the first time an exemption therefrom was provided for “property, or interests in property, transmitted * # * to or for the use of, any institution in said state for purposes of purely public charity.” 94 Ohio Laws, 102.
Apparently in the codification of 1910, these words were changed to read “property, or interests in property, transmitted * * * to or for the use of an institution in this state for purpose only of public charity.” Section 5332, General Code of Ohio 1910.
In 1919 these words were placed in Section 5334, General Code, so as to read so far as material in the instant case:
‘ ‘ The succession to any property passing * * * to or for the use of an institution for purposes only of public charity, carried on in whole or in substantial part within this state, shall not be subject to the [tax].” 108 Ohio Laws, pt. 1, 564.
This language has remained in substantially that form in our statutes since that time and now appears in Section 5731.09, Revised Code.
In Tax Commission v. Security Savings Bank & Trust Co. of Toledo, 117 Ohio St., 443, 159 N. E., 570, it is said in the opinion by Robinson, J., at page 450:
“We are unable to draw a distinction between the phrase of Section 5334, General Code, ‘an institution for purposes only of public charity,’ and the phrase of Section 2, Article XII. of the Ohio Constitution of 1851, ‘institutions of purely public charity. ’
“The Legislature is presumed to know the decisions of this court, and, where it uses words or phrases that have been defined *54 or construed by this court, it is presumed to have used them in the sense that they have been so defined or construed; and in the use of the phrase ‘institution for purposes only of public charity,’ found in Section 5334, General Code, the Legislature is presumed to have used it in the sense that this court had theretofore construed a phrase substantially the same.”
In Sowers v. Cyrenius, supra (39 Ohio St., 29), a bequest “for the preaching of the gospel of the Blessed Son of God, as taught by the people known now as Disciples of Christ” was held to create a valid charitable trust. In the court’s opinion by Upson, J., it is said:
“Among the charitable trusts which have been most liberally construed and most uniformly sustained have been those' created for the promotion of religion # *
In Cullen v. Schmit, supra (139 Ohio St., 194), paragraph two of the syllabus reads:
“A church is not engaged in a commercial enterprise and does not lose its character as a charitable institution when, following and in connection with a religious service, it offers religious articles for sale and uses any difference between the cost and sale price thereof for religious purposes.”
In Cleveland Bible College v. Board of Tax Appeals, supra (151 Ohio St., 258), it was held that a college which conferred degrees of Bachelor of Theology and Bachelor of Sacred Music was, within the meaning of the words found in Section 2 of Article XII of the Ohio Constitution, “an institution used exclusively for charitable purposes.”
In Hubbard Press v. Glander, Tax Commr., supra (156 Ohio St., 170), this court unanimously held that “where a nonprofit Ohio corporation organized and controlled by a religious denomination as one of its agencies for carrying on and promoting its religious and charitable enterprises has real and tangible personal property which is devoted and used exclusively in printing and distributing to its churches without profit envelopes and forms used solely to promote and to provide a means for the systematic giving of funds to the churches for their support and benevolences, such property” is “used exclusively for a charitable purpose.”
In American Committee of Rabbinical College v. Board of *55 Tax Appeals, supra (156 Ohio St., 376), paragraph one of the syllabus reads:
“If operated without any view to profit, an institution used exclusively for the lawful advancement of education and of religion is an institution used exclusively for charitable purposes.”
In Goldman v. Friars Club, supra (158 Ohio St., 185), the syllabus reads:
“Real property is used exclusively for charitable purposes and is exempt from taxation under Section 5353, General Code, where it is owned and operated without profit by a charitable institution and by it devoted, as its main objective, to an overall program of social, religious and educational service to persons in peculiar need thereof, without distinction as to race, color or creed, even though, as incidental to such objective, dormitory, dining room and other like services are furnished and a charge made therefor, the income therefrom being devoted to such program. ’ ’
Section 368, Restatement of the Law of Trusts, reads so far as pertinent:
“Charitable purposes include
C i # # #•
“(c) The advancement of religion.”
Comment b under that section reads in part:
“ * * * At common law in England and in the United States if is agreed that * # * the advancement * * * of religion * * * [is] of such social interest to the community as to fall within the concept of charity.”
In Gerke v. Purcell, supra (25 Ohio St., 229), it was held that parochial schools operated by the Roman Catholic Church were “institutions of purely public charity.” Paragraph five of the syllabus of that case reads:
“Schools established by private donations, and which are carried on for the benefit of the public, and not with a view to profit, are ‘institutions of purely public charity’ within the meaning of the provision of the Constitution, which authorizes such institutions to be exempt from taxation.”
In the opinion by White, J., at page 244, it is said:
“ * # * It seems to us the charity is to be regarded as purely *56 public. For the purpose of determining the public nature of the charity, it is not material through what particular forms the charity may be administered. If it is established and maintained for the use and benefit of the public, and so conducted that the public can make it available, this is all that is required. ’ ’
In paragraph two of the syllabus of American Committee of Rabbinical College v. Board of Tax Appeals, supra (156 Ohio St., 376), this court recognized that the word “public” appearing before “charity” in Section 2 of Article XII of the Constitution as it existed prior to 1912 merely required that the charity “be open generally to the public.”
In the instant case it is stipulated with respect to The Salvation Army that “none of its activities or benefits is limited in any way to any group or membership, there being no qualification for the benefits other than need for them.”
In Davis, Aud., v. Camp Meeting Assn., supra (57 Ohio St., 257), it appears from the findings of fact upon which the Supreme Court based its decision:
‘ ‘ That plaintiff * * * is organized not for profit, but for the purpose of holding in trust for the use and benefit of the Methodist Episcopal Church, such real and personal property as may be necessary and convenient for the holding, conducting, managing and carrying on religious camp meetings, in strict accordance with the policy, established usage and discipline of the said * * * church, and for the purpose of supporting and maintaining * * * public religious camp meetings, and such other public meetings for religious * * * and other public charitable purposes, as may be approved by the board of trustees of said association, all of said camp meetings and other meetings to be conducted and managed in strict accordance with the policy, established usage and discipline of said * * * church * *
The syllabus in that case reads:
“When an association, organized and conducted for the purpose of a purely public charity, as a camp meeting, under the supervision and control of some church, owns real estate devoted exclusively to the same use; and thereon provides privileges for the comfort and convenience of those who may attend the meeting, the fact that it makes charges for the use of *57 these privileges, does not subject its property, nor the privileges so provided, to taxation under the laws of this state.”
In Little v. United Presbyterian Theological Seminary, supra (72 Ohio St., 417), it was held that “an educational institution for the training of young men for the gospel ministry, free and open to all upon the same conditions and * * * controlled and managed by Synods of the United Presbyterian Church of North America” was described by the words of the Constitution which read “institutions of purely public charity.”
Humphreys, Exr., v. State, 70 Ohio St., 67, 70 N. E., 957, 101 Am. St. Rep., 888, 65 L. R. A., 776, involved bequests to the American Bible Society, the American Tract Society, the American Sunday School Union and “certain missionary societies and other benevolent religious organizations.” This court held that those legatees could not be institutions of purely public charity in this state within the meaning of the statutory enactment which provided for tax exemption for such institutions. The statutory language at that time was confined to an “institution in said state [Ohio] for purposes of purely public charity.” 94 Ohio Laws, 102. Subsequently the General Assembly changed that statutory language to substantially its present form so as to provide for “an institution for purposes only of public charity, carried on in whole or in substantial part within this state. ’ ’ 108 Ohio Laws, pt. 1, 564. It may fairly be inferred that, in doing so, the General Assembly had in mind the Hum-phreys case and intended to provide for the organizations dealt with in that case and for similar organizations where they carried on a substantial part of their activities in this state.
In support of its contention that an institution cannot be one “for purposes only of public charity” if some of its purposes are religious purposes, appellee cites In re Estate of Osborn, 159 Ohio St., 63, 110 N. E. (2d), 791; In re Estate of Shanahan, 159 Ohio St., 487, 112 N. E. (2d), 665; In re Estate of Taylor, 139 Ohio St., 417, 40 N. E. (2d), 936; In re Estate of Weld, 71 Ohio App., 497, 50 N. E. (2d), 275; In re Estate of Julian, 93 Ohio App., 221, 113 N. E. (2d), 129; In re Estate of Salisbury, 90 Ohio App., 17, 101 N. E. (2d), 304; and In re Estate of White, 23 N. P. (N. S.), 574.
*58 In the Osborn case, the institution involved did not carry on any substantial part of its activities in Ohio. Hence, it could not contend and this court did not consider whether it was an “institution for purposes only of public charity, carried on in whole or in substantial part within this state. ’ ’ Thus it was not necessary for this court to consider and it did not consider in that case whether religious purposes would be charitable purposes. The decision was concerned merely with other portions of the statute which are not involved in this case.
The Shanahan case involved a direction to expend part of an estate for Masses. There is nothing in the syllabus or opinion which will support a contention that religious purposes are not charitable purposes. The reason why such a provision is not regarded as one for an “institution for purposes only of public charity” is that “the money expended for Masses goes as a gratuity for the personal use of the priest who says the Masses.” In re Estate of Reilly, 138 Ohio St., 145, 148, 33 N. E. (2d), 987. As stated in the report of the Shanahan case “the church as an institution has no possessory interest in the funds paid for Masses, such funds being solely the property of the priest who says the Masses.”
In re Estate of Taylor, supra (139 Ohio St., 417), did hold that, since the American Bible Society was “circulating the King James version * * * which is used only by a part of the people,” to hold that that society was an institution for purposes only of public charity would require a doubtful construction of Section 5334, General Code. There is nothing in the syllabus of that case to indicate that religious purposes are not charitable purposes. Actually paragraph two of the syllabus apparently recognizes that religious purposes may be charitable purposes. All the judges concurred in the syllabus, but three of the judges dissented from the judgment, with Judges Hart and Zimmerman writing dissenting opinions. At the very next session of the General Assembly there were added after the statutory words involved in that and this case the words “or to an institution or organization not for profit and for the exclusive purpose of printing and distributing the Holy Bible,” thereby rather clearly indicating the disagreement of the General Assembly with the construction given by this court to the statutory *59 words involved in the instant case when it rendered its decision in In re Estate of Taylor. Although that case has been cited as an authority for the proposition that statutory provisions for tax exemption should be strictly construed, it has never been cited by this court as authority for the proposition that charitable purposes do not include religious purposes.
Although we áre not bound to follow the foregoing Court of Appeals and Nisi Prius decisions, we have considered the reasons advanced in support of those decisions but have found nothing therein to persuade us to reach different conclusions from those which we have reached in this case.

Judgment reversed.

Weygandt, C. J., Matthias and Stewart, JJ., concur.
Hart, Zimmerman and Bell, JJ., dissent.