ANSTAT, DECEASED, ESTATE OF, IN RE: BOWERS, TAX COMMISSIONER OF OHIO, APPELLANT, *v.* ANTI-DEFAMATION LEAGUE OF B'NAI B'RITH ET, APPELLEES.

Ohio Appeals, First District, Butler County.

No. 1176. Decided March 16, 1964.

Mr. *William B. Saxbe*, attorney general, and Mr. *Donald A. Hertlein*, assistant attorney general, for appellant.

Mr. *Carl Morgenstern*, Mr. *Baron Gold*, Mrs. *Anita Walters*, Mr. *Allen Brown* and Mr. *Milton M. Bloom*, for appellees.

Hover, P. J.  This is an appeal by the Tax Commissioner from a determination of the Probate Court of Butler County, holding certain bequests of the Estate of Abraham Anstat (deceased October 29, 1960), exempt from Ohio Inheritance Tax because made to religious or charitable organizations.  The exemptions appealed from concern bequests to the Anti-Defamation League of B'nai B'rith (a non-profit corporation of the District of Columbia); Hadassah, The Women's Zionist Organization of America, Inc. (a corporation of the state of New York); and Histadrut, the National Committee for Labor Israel (a legal entity of the state of New York).  The will also made bequests to other organizations which were originally excepted to in the court below but which were not pressed by the appellant Tax Commissioner, namely: The Leo N. Levi Memorial Hospital (Hot Springs, Arkansas); The National Jewish Hospital (Denver, Colorado); and The Jewish Hospital of Cincinnati, Ohio.

The court found, without opinion, that the three organizations with which we are here concerned were exempt as being religious and charitable in nature; and, although not located in the state of Ohio, were located in other states, including the District of Columbia, which provide reciprocal exemptions for similar bequests as contemplated by the Inheritance Tax Law of Ohio.

From the record it appears that the three organizations differ materially as to scope of operation, purposes, and the ultimate beneficiaries, both as to the kind of philanthropy provided and the locale of their good works. It will accordingly be necessary to give some consideration separately to each of the three organizations as their activities appear from the record.

*ANTI-DEFAMATION LEAGUE OF THE B'NAI B'RITH.*

This is a non-profit corporation organized under the laws of the District of Columbia and maintaining a regional office at Columbus, Ohio. The stated purpose of the organization is "to advance good will and proper group understanding between American groups, to preserve and translate into greater effectiveness the ideals of American democracy; to eliminate defamation of the Jews and counteract un-American and anti-American activities."

The organization operates on a national scale. Its detailed activities set out in the record are totally consistent with and in furtherance of the above stated purposes. The activities of the organization while concerned to some degree with matters peculiar to the Jewish religion and in explanation thereof, are by no means confined to this field and, apparently, have as their principal aim the furtherance of interdenominational understanding, tolerance and cooperation. The organization works closely with many other eleemosynary and religious groups of general community service and long-standing acceptance. The work of the organization is carried on generally throughout the United States and is not concentrated in any one area. It is apparent that a substantial portion of the organization's religious, educational and charitable work is carried on within the state of Ohio. The financial structure of the organization is not such as would readily permit an accurate monetary evaluation of the actual amount of service performed within the state of Ohio, but there is no doubt that the scope of the organization's activities include not only this state and the place of its incorporation, but indiscriminately the country as a whole.

*HADASSAH, THE WOMEN'S ZIONIST ORGANIZATION OF AMERICA, INC.*

This is a New York corporation having a number of different but related objectives and purposes which may be para-

phrased as follows: To provide welfare services for needy persons in the state of Israel; to promote medical education and other scientific studies and research in that state; to effect the immigration to Israel of Jewish young people from areas in which they might be oppressed, threatened, abused or discriminated against; to provide for the support of such immigrants; to foster the Jewish religion among Jewish youth; to promote the growth and welfare of a national Jewish homeland; and to strengthen American democracy through information and study programs.

Membership in the organization is open to any woman in the United States subscribing to its purposes. The organization maintains local chapters for carrying out its programs and objectives. There are sixteen of these in the state of Ohio. The organization has as major sources of income, membership dues and various fund-raising projects undertaken by the chapters. Of the membership dues, fifty per cent is retained by local chapters. Again, as in the case of the Anti-Defamation League, it is impractical if not impossible to pinpoint the actual amount of money spent by Hadassah in promoting its purposes within the state of Ohio other than to say that the sum is, again, substantial. The record indicates, however, that of the total amount raised in Ohio approximately two per cent was spent on the so-called Americanism Program of Education and Information. Although the record does not say so explicitly, apparently similar fund-raising and expenditures are carried on in other states, including the state of domicile, New York. Total funds handled during the course of a year by the organization approximate eleven million dollars, of which approximately one million eight hundred thousand dollars is from dues and the balance from fund-raising. Of the total amount of income of the organization from all sources, approximately seventy-seven per cent is sent to the state of Israel in furtherance of the objectives of the organization there.

*NATIONAL COMMITTEE FOR LABOR ISRAEL, HISTADRUT.*

This non-profit organization, as originally formed, had as stated purposes the assisting of Jewish workers and Jewish pioneers in Palestine; the building of agricultural settlements and other enterprises and schools there; the furnishing of tools, machinery and other aid for workers; and the operating of an

employment and lending agency for such persons. It is also authorized in the furtherance of these purposes, to cooperate with other organizations having similar purposes both in Palestine and in the United States, and to raise funds to further the objectives as well as to establish committees and bureaus in the United States to carry out the above primary purposes of the organization. Subsequent to its original formation, the charter was amended to enlarge upon and set out in further detail the above objects. The amended charter, however, does not materially affect the matters pertinent to this inquiry.

In furthering its aims, the organization carries on educational programs in the United States and the state of Ohio to acquaint people with its program for the furtherance of its welfare operations in Israel. The latest available accounting of the funds of the organization, prepared by Haft & Haft of Tel Aviv, Israel, for the year 1960, indicates the expenditure there in furtherance of the organization's various programs to have been $2,930,000.00. All of the funds received by the organization, over and above administrative costs, are forwarded to Israel to support the charitable and welfare programs established there.

Each of these organizations performs highly commendable and valuable services to the beneficiaries of their respective activities. The mere fact, however, that activities are worthwhile or commendable or highly beneficial, is not in and of itself sufficient to effect a tax exemption under exemption statutes generally, and, more specifically, under the terms of the Inheritance Tax Law of Ohio.

The only statute directly involved in this litigation is Section 5731.09, Revised Code. The statute, insofar as it relates to tax exempt bequests as distinguished from individual, private legatees, has been amended eight times since 1919. The effect of each successive amendment has been to enlarge both the subjects and the objects of exemption. Rather consistently, statutory amendments have occurred after the courts have determined that some institution or activity, otherwise worthy and desirable, is nevertheless not exempt from the payment of a succession tax. Amendments have rather consistently followed providing additional and specific exemptions. The statute became effective in its present form in August of 1959 and, conse-

quently, is the form to be considered in determining successions originating in the decedent here who died in October of 1960. The statute in its present form has been amended piecemeal and has become sufficiently complicated to require some detailed analysis in view of the facts developed in this record. It can be clarified by some abstracting as follows: Successions are exempt to political subdivisions if they are within the state and have an exclusive public purpose. Successions to educational institutions, non-profit hospitals, and established religious organizations are exempt if they are within the state. Successions to educational institutions, non-profit hospitals, religious organizations and community trusts or foundations for public charity only are exempt if they are carried on within any state of the United States not taxing similar successions to Ohio institutions. Institutions of purely public charity are exempt if carried on in whole or in substantial part in Ohio. Institutions for the non-profit distribution of the bible are exempt. Testimentary provision for religious rites or services is exempt.

In order to permit exemption, the non-profit organizations with which we are here concerned must come within one of the foregoing specific categories. Under the above analysis these organizations, if entitled to exemption at all as a matter of reciprocity, must be properly classifiable as non-resident institutions of learning, non-profit hospitals, established religious organizations, or community trusts or foundations for public charity only. They must be located in some state of the United States which does not tax similar successions to Ohio institutions. These conditions exist or they are exemptible only as being institutions for purposes only of public charity carried on in whole or in substantial part in Ohio. Obviously, to justify exemption under the reciprocal provision of the statute, the organization must be one that would exempt in the first instance if it were domiciled in Ohio. Without this qualification, the provision for reciprocity has no application.

As stated with approval in *Tax Commission* v. *Paxson*, 118 Ohio St., 36, ''A claim of exemption from taxation by virtue of a statute is construed strictissimi juris. It must rest upon language in regard to which there can be no doubt as to the meaning, and the exemption must be granted in terms too plain to be mistaken.''

This is simply a statement of a general rule of taxation and is tempered only by the further observation that the statute must nevertheless be given a reasonable construction. In the light of a strict but reasonable construction, the within organizations cannot be determined to be institutions of learning, public hospitals not for profit, established religious organizations, or community trusts or foundations for public charity only carried on either in Ohio or some reciprocating state. While at least two of these three organizations partake to some degree of educational activities, hospital maintenance and religious matters almost exclusively in the state of Israel, it cannot be said that any of them, viewed as a whole, can qualify for reciprocal exemption as between states, nor do they partake of any of the attributes of a community trust or foundation carried on for public charity only.

The question remains whether all or any of them are institutions ''for purposes only of public charity carried on in whole or in a substantial part within this state'' as provided by the statute.

The determination of this question requires an examination of numerous Ohio decisions which have dealt with this problem, as well as pertinent decisions from other jurisdictions. In view of the many amendments made to the Inheritance Tax statute, it must be borne in mind that some previously adjudicated questions of exemption under former statutory provisions are no longer applicable in determining the ultimate question but are still helpful in determining what is an institution for purposes only of public charity. Many charitable institutions formerly not exempt are currently so, not because of any change in the legal concept of ''public charity,'' but because of a specific change in the statute.

Prior to the inclusion in the statute of the phrase, ''carried on in whole or in part within this state,'' a non-domestic charity was not exempt. See *Humphreys* v. *Ohio*, 70 Ohio St., 67.

In *Bible Society* v. *Department of Taxation*, 139 Ohio St., 417, an institution engaged in the printing of bibles, the encouragement of bible study, and the distribution of bibles, while in some respects an institution of learning was, nevertheless, determined to be charitable rather than educational in nature.

It was further determined that such an institution was not one for purposes only of public charity and accordingly not exempt.

The same estate was given detailed consideration in regard to similar charitable legatees in the prior opinion of the Probate Court (*In re Estate of Taylor*, 19 Ohio Opinions, 204), where it was also held that the Board of National Missions of The Presbyterian Church was not an institution for purposes only of public charity. The same reasoning was applied to The Presbyterian Board of Publication and Sabbath School Work and to the China Inland Mission and the Board of Foreign Missions of The Presbyterian Church. All were charitable,— none public.

It was determined that each of these organizations, while charitable in nature, were not for purposes only of public charity within the meaning of the exemption statute. This viewpoint in regard to religious and missionary activities as institutions of purely public charity was confirmed in the later case, *Estate of Osborn*, 159 Ohio St., 63.

As to the requirement that the organization claiming to be exempt carry on its beneficent work in whole or in substantial part within Ohio, reference is had to *Estate of Parish*, 107 Ohio App., 43. In this case, a charitable bequest to a children's home in Indiana was deemed not exempt even though the record indicated that 36% of the children in the home were from Ohio, that six Ohio children had been committed to the home from Ohio welfare agencies, and that the unreimbursed cost for the care of these Ohio children was very substantial.

*In Estate of Miller*, 171 Ohio St., 202, the court held that a bequest to a specific Ohio church which was conducted for both charitable and religious purposes only, and *which were open and available to the public generally*, was one for purposes only of public charity within the meaning of the exemption statute. (Emphasis added.) This is one of the latest pronouncements of The Supreme Court on this particular type of succession.

The court in the above case re-examined the finding in *Estate of Seaman*, 166 Ohio St., 51, to the effect that an institution organized and conducted for religious and charitable purposes only, and open and available to the public generally as to its benefits, is exempted by the statute. Reported in the

same volume is *Estate of Bremer*, 166 Ohio St., 233, which we believe is ultimately determinative of the problem with which the court is here concerned. The question concerned a charitable foundation, the benefits of which were to be carried out principally in the state of Ohio. The succession was not exempt for the reason that there was no requirement that the charitable activities be carried on in whole or in any part within the state. The matter hinged on the correct application of the word "public" as used in the statute. The court observes:

"It is important to note that the purpose of the exemptions set out in the quoted provisions of Section 5731.09, Revised Code, is not that the state, for purely altruistic reasons, is 'donating' to the succession for public charitable purposes by not subjecting it to taxation, but that the premises upon which such exemptions are based are the just and equitable grounds that (1) the function of a democratic government is to benefit the people it serves, the public, and the only justification for taxes is that the money derived therefrom helps defray the cost of such benefits, and (2) if a succession is made for the sole purpose of public charity then the benefits of such succession are actually serving the same purpose as the benefits of a tax.

"It is, thus, apparent that, in order for a succession to supplant the purpose of the *Ohio* succession tax, which only benefits the public of *Ohio*, the benefits of such succession for public charity only must devolve to the people of Ohio or, the reason for the exemption being nonexistent, the exemption fails to attach. This is the reason for the requirement of Section 5731.09, Revised Code, that the public charity must be 'carried on in whole or in a substantial part within this state.' "

There are many other adjudications in Ohio to the effect that institutions partaking of educational, religious and charitable aspects intermingled are, nevertheless, not exempt from inheritance taxes because they are not *public* in nature. *Tax Commission* v. *Security Savings*, 117 Ohio St., 443; *Estate of Weld* v. *Tax Commissioner*, 71 Ohio App., 497; *Estate of Julian*, 93 Ohio App., 221; *Tax Commissioner* v. *Women's Club*, 87 Ohio Law Abs., 92.

The rule thus referred to is also considered in 28 American Jurisprudence, pages 243 to 246, and follows the general principle that the charity confer some benefit, direct or indirect, upon

the public encompassed within the governmental authority levying the tax,—in short, that the charity, in order to be public, must perform substantially in this state, as well as some other state or states, charitable or welfare services the states might, could or should do themselves. This rule has been widely adopted and applied. (See *Society of Cincinnati* v. *Exeter*, 92 N. H., 348; *Academy* v. *Philadelphia*, 150 P. A., 565; *Hewitt* v. *Camden County*, 7 N. J. Misc., 528; *Hennepin County* v. *Brotherhood*, 27 Minn., 460; *Clevenger* v. *Rio Farms*, Tex. C. A., 204 S. W. (2d), 40; *Powers* v. *Bank*, 138 Tex., 604; *Robinson* v. *Crutcher*, 277 Mo., 1; *Bills* v. *Pease*, 116 Me., 98; *Church* v. *United States*, 136 U. S., 50; *Troutman* v. *DeBoissiere*, 66 Kan., 1; *Kent* v. *Dunham*, 142 Mass., 216.)

Viewed by the requirements of the exemption statute as the controlling phrases thereof have been judicially determined, it becomes apparent that the Anti-Defamation League of the B'nai B'rith will qualify under the laws of Ohio as an institution for purposes of public charity only, with religious and educational purposes and programs intermixed, but nevertheless having a direct relationship to the requirement of a public charity. Its benefits are available to the public generally and, while carried on throughout the United States, exist in substantial part within the state of Ohio. It is not necessary that the phrase "substantial part" be given a quantitative meaning as the result of the application of some mathematical formula related to expenditures. Such a formula, even if one could be devised that would be both fair and logical in application, would still fail to reflect the true intent of "substantial part" because it would wholly ignore the non-monetary value of objectives and important qualitative factors in regard to the services rendered. It is sufficient that the organization provides its services to the public generally throughout the United States and that this state participates substantially in the activities of the organizaiton indiscriminately with others.

By the same token, the other two organizations with which we are here concerned, Hadassah, The Women's Zionist Organization of America, Inc. and The National Committee for Labor Israel, Histadrut, are neither formed nor operated for purposes only of public charity as that phrase is used in the statute. The objects of the charity of these organizations are directed toward

the welfare of existing and prospective citizens or residents of another nation as a political entity. Activities carried on either in the state of Ohio or in the state of legal domicile of the two organizations, are directed almost exclusively to promoting the good works of the organizations in another nation. Such activities, while charitable, do not fit the concept of a public charity as that phrase is used in taxation statutes. The process of becoming a public charity does not derive from those persons who choose to participate in it and to further its aims, nor does it hinge on the question of the legal residence of the organization itself. The controlling factor is the nature of the charitable activities; that is, whether they meet the requirement that the objects of the charity be open and available to all persons generally and indiscriminately, and whether the objects of the charity are such that they forward or promote welfare activities which the taxing state might, could or should do itself. These organizations, while thoroughly commendable in their aims and good works, and undoubtedly of immense value to the recipients of their philanthropy, nevertheless do not measure up to the requirements for inheritance tax exemption.

The attention of the Court has been called to an unreported case decided without opinion, *In re Klinetop*, wherein the Court of Appeals for Lucas County affirmed a decision of the Common Pleas Court of that county to the effect that Hadassah, The Women's Zionist Organization of America, Inc., was eligible for exemption as an institution for purposes only of public charity carried on in substantial part in the state of Ohio. Lacking any indication of a finding of fact or the state of the record upon which this decision was presumably based, this Court does not feel that the bare conclusion of the other court is sufficiently persuasive in view of the state of the record and the uncontradicted facts presented for review in this Court.

It is accordingly held that the judgment of the Probate Court of Butler County be affirmed as to the Anti-Defamation League of B'nai B'rith, and he reversed as to Hadassah, The Women's Zionist Organization of America, Inc. and The National Committee for Labor Israel, Histadrut.

HILDEBRANT, J., concurs.