Turner, J.
 

 Appellant, in seeking a reversal of the
 
 *419
 
 judgments of the lower courts, propounds two questions :
 

 First, is it (appellant) an institution of learning?
 

 Second, is it an institution for purposes only of public charity?
 

 Section 5334, General Code, provides iirpart:
 

 “The succession to any property passing to or for the use of the state of Ohio, or to or for the use of a municipal corporation or other political subdivision thereof for exclusively public purposes, or public institutions of learning within the state, or institution of learning within any state of the United States which state does not impose an inheritance, estate or transfer tax on property given, devised or bequeathed by a resident thereof to an institution of learning within this state, or to or for the use of an institution for purposes only of public charity, carried on in whole or in substantial part within this state, shall not be subject to the provisions of the preceding sections of this subdivision [Sections 5331 to 5348-16, General Code] of this chapter.”
 

 It is admitted that appellant gives no formal instruction. In direct examination, Mr. Bruce G. Cameron, in charge of appellant’s Ohio office, testified: “We are unfortunate in the sense that we do no teaching at all.”
 

 However, it is claimed that the term “institution of learning” is broad enough to include a society whose declared purpose is publishing and promoting a general circulation of the Holy Scriptures without note or comment. With this claim we cannot agree.
 

 The sole object of appellant under its constitution is to encourage a wider circulation of the Holy Scriptures without note or comment.
 

 An institution of learning connotes a teaching staff and students. As stated by the trial court in its opinion:
 

 “The idea which the phrase ‘institutions of learning,’ brings to mind is an institution composed of a
 
 *420
 
 group of learned men and women associated together for the purpose of instructing another group of persons, usually young men and women, in the accumulated knowledge, skill and wisdom of mankind. An institution of learning must at least embrace the idea of someone, possessed of knowledge and skill, capable of and in a position to impart such knowledge and skill to others in position to and capable of learning them. An institution whose sole purpose is to publish books and distribute them does not seem to be in any sense of the term, an institution of learning. ’ ’
 

 It remains then to determine whether appellant is an institution for purposes
 
 only
 
 of
 
 public
 
 charity.
 

 Whether appellant is a charitable institution is not controlling. The question here is whether it is an institution for purposes
 
 only
 
 of
 
 public
 
 charity. While it may circulate its Bibles freely, yet it is circulating the King James Version thereof, which is used only by a part of the people. It is argued that these Bibles are furnished to persons irrespective of creed. Granting this, the appellant then is engaged in the propagation of a branch of the Christian religion.
 

 Appellant’s exhibit 19 quotes Article I of its constitution, as follows:
 

 “This society shall be known by the name of the American Bible Society, of which the sole object shall be to encourage a wider circulation of the Holy Scriptures without note or comment. The only copies in the English language, to be circulated by the society, shall be of the version set forth in 1611, and commonly known as the King James Version, whether in its original form as published in the aforesaid year or as revised, the New Testament in 1881 and the Old Testament in 1885, and published in these years under the supervision of the Committee of Revision, or as further revised and edited by the American Committee of Revision and printed under its supervision in 1901.”
 

 This distinction would be readily apparent if appel
 
 *421
 
 lant’s purpose was the publication and circulation of the Koran or the teachings of Buddha or Confucius. Yet our Constitution (Section 7, Article I) declares that all men have a natural and indefeasible right to worship Almighty God according to the dictates of their own conscience and that no preference shall be given by law to any religious society. While recognizing that religion, morality and knowledge are essential to good government, the Constitution makes it the duty of the General Assembly to protect every religious denomination in the peaceable enjoyment of its own mode of public worship.
 

 It is argued that Section 5334, General Code, was amended several years after the decision of this court in
 
 Humphreys, Exr.,
 
 v.
 
 State,
 
 70 Ohio St., 67, 70 N. E., 957, 101 Am. St. Rep., 888, 65 L. R. A., 776, so as to include appellant. In the course of the opinion in that case, Judge Price said, at page 77:
 

 “ * * * and it may be admitted that theirs are works of charity in the broad sense, that the uplifting of men, women and children to the standard of life taught in the Scriptures is indeed a work of charity, the greatest of the three Christian graces.” But Judge Price did not say that such works were
 
 public
 
 charity
 
 only.
 

 Under the phraseology of the amendment, it cannot be assumed (if otherwise it could be) that it was the legislative intention to include appellant as an exempt institution.
 

 To hold that appellant is an institution for purposes
 
 only
 
 of
 
 public
 
 charity would require a doubtful construction of Section 5334, General Code. While exemption laws have long been recognized under our Constitution and statutes, yet they have always required strict construction. Or, to put it in the broadest terms recognized by this court, there is no presumption of, exemption from taxation irrespective of the character of the institution.
 

 
 *422
 
 While it is said in 38 Ohio Jurisprudence, 854, that “the rule of strict construction has been somewhat modified in the case of exemptions of religious, charitable, and educational institutions, it having been declared that, as to such institutions, the policy and spirit of the law should be considered in determining the legislative intent,” such statement of declaration is based largely upon the statement of a single judge of this court in the course of the opinion in the case of
 
 Watterson
 
 v.
 
 Halliday, Aud.,
 
 77 Ohio St., 150, 82 N. E., 962, 11 Ann. Cas., 1096, where, at page 169, Judge Price said: “And while we do not apply strict rules of construction in cases where religious, charitable and educational institutions seek exemptions, we think such right to exemption should appear in the language of the Constitution or statute, with reasonable certainty, and not depend on their doubtful construction.” But at page 170, Judge Price also said: “There is no presumption of exemption from taxation because the institution claiming it is of a religious or charitable nature, for it is perfectly competent for such institutions to own property clearly subject to taxation.”
 

 It is to be noted, too, that in the case of
 
 Watterson
 
 v.
 
 Holliday, Aud.,
 
 no exemption was recognized.
 

 It would take up much space and would not be helpful to attempt to discuss all of the cases in this state applicable to the question of exemptions from taxation. Suffice it to mention one of the earliest and several of the latest cases decided by this court.
 

 In the case of
 
 Cincinnati College
 
 v.
 
 State,
 
 19 Ohio, 110, 115, it was said: “All laws that exempt any of the property of the community from taxation should receive a strict construction. All such laws are in derogation of equal rights.”
 

 In the case of
 
 Tax Commission
 
 v.
 
 Paxson, Admr.,
 
 118 Ohio St., 36, 160 N. E., 468, Judge Allen said, at page 41:
 

 “There is no presumption of exemption from taxa
 
 *423
 
 tion because the institution claiming it is of a religious or charitable nature, for it is perfectly competent for such institutions to own property clearly subject to taxation. This was the basis of the holding in
 
 State, ex rel. Boss,
 
 v.
 
 Hess, Auditor,
 
 113 Ohio St., 52, 148 N. E., 347.”
 

 In -the case of
 
 Cullitan, Pros. Atty.,
 
 v.
 
 Cunningham Sanitarium,
 
 134 Ohio St., 99, 16 N. E. (2d), 205, it was held: “There is no presumption favorable to the exemption of property from taxation. An exemption from taxation must be clearly and expressly stated in the statute and must be such only as is authorized by the Constitution. ’ ’ In the course of the opinion, Judge Matthias said, at page 100: “There is no presumption favorable to exemption from taxation. On the contrary, the right to such exemption must be shown 'indubitably to exist.’
 
 Lee, Treas.,
 
 v.
 
 Sturges,
 
 46 Ohio St., 153, 19 N. E., 560, 2 L. R. A., 556;
 
 Benjamin Rose Institute
 
 v.
 
 Myers, Treas.,
 
 92 Ohio St., 252, 110 N. E., 924, L. R. A. 1916D, 1170. Moreover, the exemption from taxation must be clearly and expressly stated in the statute and must be such only as is authorized by the Constitution.
 
 Wilson, Aud.,
 
 v.
 
 Licking Aerie,
 
 104 Ohio St., 137, 135 N. E., 545;
 
 State, ex rel. Boss,
 
 v.
 
 Hess, Auditor,
 
 113 Ohio St., 52, 148 N. E., 347.”
 

 The fact that the Tax Commission, as the administrative body, the trial court and all of the judges of the Court of Appeals, as well as a majority of the members of this court, have been unable to find that appellant comes within the terms of Section 5334, Q-eneral Code, should tend at least to demonstrate that the exemption from taxation claimed in the instant case depends upon a doubtful construction of the law.
 

 There being no reasonable certainty of the statutory exemption and no presumption of exemption from taxation because the institution claiming it is of a re
 
 *424
 
 ligious or charitable nature, the judgment of the Court of Appeals should be, and is, affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Matthias and Bettman, JJ., concur.
 

 Williams, Hart and Zimmerman, JJ., concur in the syllabus but dissent from the judgment.