Turner, J.,
 

 dissenting'. I agree with the syllabus and my Attorney General Opinion cited above, but dissent from the judgment for the reason that appellant did not sustain the burden of proving before the Board of Tax Appeals that this real estate was
 
 in no wise
 
 held with a view to profit. It appears from the record that the organization of Evergreen Memorial Park Association was a real estate promotion entered into for profit by one Albert H. Bramson, the owner of a tract of land upon which the taxes were partly unpaid.
 

 In the case of
 
 Stritch, City Aud.,
 
 v.
 
 Budget Commission of Clark County,
 
 140 Ohio St., 495, 45 N. E. (2d), 601, we held:
 

 “Upon an appeal to this court a decision of the Board of Tax Appeals will not be reversed unless the evidence discloses that the decision is unreasonable or unlawful. (Paragraph 2 of the syllabus in the case of
 
 Board of Education of Cleveland Heights City School Dist.
 
 v.
 
 Evatt, Tax Commr.,
 
 136 Ohio St., 283, approved and followed.) ”
 

 As said by Judge Matthias in
 
 Zindorf
 
 v.
 
 Otterbein Press,
 
 138 Ohio St., 287, 292, 34 N. E. (2d), 748:
 

 “This court will not interfere with a decision of the Board of Tax Appeals unless it appear from a consideration of the
 
 entire record
 
 that such decision is unreasonable or unlawful.” (Italics mine.)
 

 
 *12
 
 This court has held repeatedly that a right to exemption from taxation must appear with reasonable certainty and must not depend upon a doubtful construction of any constitutional or statutory language. (See
 
 In re Estate of Taylor,
 
 139 Ohio St., 417, 40 N. E, [2d], 936, and cases there cited; also
 
 Incorporated Trustees of Gospel Workers Society
 
 v.
 
 Evatt, Tax Commr.,
 
 140 Ohio St., 185, 42 N. E. [2d], 900.)
 

 The law of the earlier cases is summarized by Judge Matthias in the case of
 
 Cullitan, Pros. Atty., v. Cunningham Sanitarium,
 
 134 Ohio St., 99, 100, 16 N. E. (2d), 205, as follows:
 

 ' “ * * * There is no presumption favorable to exemption from taxation. On the contrary, the right to such exemption must be shown ‘indubitably to exist.’ ”
 

 With the foregoing in mind, let us examine the record of the proceedings"before the Board of Tax Appeals and see whether appellant established that that part of the real estate which the Board of Tax Appeals refused to exempt from taxation was held
 
 in no wise
 
 with a view to profit.
 

 Albert H. Bramson testified that he was “generally in the real estate business.” He further testified that he was the owner of the real estate in question prior to the organization of Evengreen Memorial Park Association.
 

 At the time of the application for exemption, the entire property was on the tax duplicate at $5,270 after all the claimed improvements had been made, excepting that the cement block and stone truck garage built in 1939 had not yet been assessed for taxation.
 

 The plan which Mr..Bramson, the real estate dealer, conceived for the sale of his acreage, on which a large portion of the 1938 taxes were unpaid, may be seen from the following excerpts from his testimony:
 

 
 *13
 
 “The witness: * *• * ' No interest has been paid. I am perfectly contented to wait along until such time as it [the association] can pay it, is able to pay it. * * *
 

 “A. Well, I can give you an idea about that. See, a cemetery business, if you conduct it strictly as a cemetery, and as we are conducting it, and restrict the sales for only immediate use, and — for only that use, rather, and refuse- sales for investment, you cannot derive enough income when you first start, to pay back the original investment of the property; but as time goes along you increase, oh, if you have 100 burials, the first year, you automatically are going to have from the same families, 125, from the same people, the second year, and if you add 125 to the first hundred, you have got 225. So the following year that is increased again, you see. So that while you have
 
 a
 
 few when you start with, you keep on doubling up as you go along, so that you are first beginning to see sunshine in a cemetery at the end of about a five-year period.”
 

 Mr. Bramson disclosed that the approximately 24% acres' would divide up to some 18,000 to 20,000 graves when developed, at $30 a grave, which would mean a total possible selling price of $600,000 in addition to the charges made by the association for grave digging, etc.
 

 While the majority statement of facts refers to the price of single-grave lots as $13.50, Mr. Bramson testified:
 

 “In our single grave sections the graves averaged about $13.50 to date, plus an interment charge of $15 for each grave used. That interment charge applies to family plot graves, as well as single graves. The family plot section, the price of our graves to date are $37.50 per grave, in the family plot section.”
 

 The Department of Taxation’s investigator found that single-grave lots are priced at $25 and four- or
 
 *14
 
 six-grave lots, of which about twenty had been sold, at a smaller price
 
 per
 
 grave, depending on location.
 

 Inquired of as to his sales method, Mr. Bramson testified:
 

 “They are being sold by church men, by pastors of various churches, and by — through undertakers, and •by application by inquiries which come in.
 

 “Q. How many colored churches do you contact?
 

 “A. All of them.
 

 “Q. Give us some idea. How many are in this ■district?
 

 “A. About a hundred, I guess. Reverend Crable [President of Evergreen Memorial Park Association] is the Moderator of all the Baptist churches of Ohio, .and through him we contact all Baptist churches.”
 

 Exhibit B shows that up to the time of the application for exemption, Evergreen Memorial Park Association had spent $2,368.08 for advertising and :$1,626.18 for sales expense.
 

 Here, then, was Mr. Bramson’s plan
 
 with a vieto to
 
 profit: To organize.a cemetery association which he would control and to turn over the legal title of his real estate to the association, which would avoid the payment of taxes; no down payment of any kind to be made by the association, as that would involve bringing in outsiders to put up the cash and interfere with control; to secure some prominent churchman to stand at the front of the enterprise and then to gather about this prominent churchman a sales organization of people who believed they were doing a public service.
 

 From the evidence, it is clear that Mr. Bramson expected that at the end of approximately five years he would receive for his non-income-producing tract, on the tax duplicate at $5,270, the principal sum of $60,000 and accumulated interest of $15,000 without -expense of any kind — all advertising and sales expense
 
 *15
 
 to be paid out of the cemetery association’s receipts and a tax exemption to be secured through the as-, sociation.
 

 In addition, Air. Bramson provided that he was to draw a salary of $1,200 per year. Even if this salary was not increased as sales grew, he would be set to get a total of $81,000 for this vacant and unproductive land. If he could not get all of this money, he could still foreclose his mortgage and get either the balance or all of his real estate back.
 

 Pursuant to the foregoing plan, which is clearly deducible from the evidence, Air. Bramson did organize the cemetery association; did turn over the naked legal title to the real estate to the association; did become manager, secretary and treasurer; did secure a prominent churchman to head up the association; and is selling the lots not only without any expense to himself but drawing a salary for looking after his own interests.
 

 I am unable to see Evergreen Alemorial Park Association as something separate and apart from Air. Bramson. To me, this association, with not a dollar invested, is a mere agency or instrumentality of Air. Bramson. Evergreen Alemorial Park Association may have no profit, but through it Air. Bramson will have a substantial profit. However, if Air. Bramson’s own figures are verified by experience the association will be able to sell lots to realize in gross ten times the amount of the mortgage which was the sole consideration.
 

 As the refusal of the Board of Tax Appeals to exempt more than 4.4 acres of the land in question is neither unreasonable nor unlawful, its decision should be affirmed.
 

 Weygandt, C. J., concurs in the foregoing dissenting opinion.