Middleton, J.
Pursuant to the power granted by Section 2, Article XII of the Constitution of Ohio, the General Assembly enacted Section 5351, General Code, which provides in part:
“Real or personal property belonging exclusively to the state or United States, and public property used for a public purpose, shall be exempt from taxation.” (Emphasis supplied.)
Is the land in question, comprising 14.42 acres, “public property used for a public purpose”?
Ownership by the city of Dayton constitutes the land public property. City of Toledo v. Jenkins et al., Board of Tax Appeals, 143 Ohio St., 141, 54 N. E. (2d), 656.
The appellant urges two, not wholly consistent, grounds for claiming that the land is used for a public purpose: (1) That the leased area is being used by appellant for public airport purposes and (2) that the storage of grain by the lessee is use by the federal government.
Appellant relies upon Toledo v. Jenkins, supra, in support of its first proposition as stated above. In that case the city of Toledo owned the airport, excepting one building. It rented out portions of its buildings and hangars. In discussing- the effect of such use by others, Judge Williams in the opinion said:
“Public utilities are created to-render service to the public and for the service a charge is made. Any incidental use allied to the main public purpose is likewise public. Renting space in buildings to others to promote aviation by extending service at the airport to all the public using its facilities would be a use incidental to the main public purpose. Moreover, *370 the mere fact that revenue is received for the space so rented does not change the public aspect, so long as the purpose of the utility is subserved and the objective is not primarily to obtain revenue. It is the ‘primary and principal’ use that controls and the fact that incidental revenue is derived from the property does not in and of itself alter the public character of the use to which the property is put. For authorities see annotation 101 A. L. R., 790. So all the real estate necessary and incidental to the operation of a municipally owned and controlled airport unit would in its operation be concerned with a public use.”
In applying the principles so stated, the opinion discusses use of the hangars by individuals and the use of office space in the airport buildings by the United States Department of Agriculture “presumably for a weather bureau,” by the United States Department of Commerce “presumably for aeronautic purposes,” by two air lines and by a school in which flying was taught. Such uses were not considered as changing the public aspect of the use of the airport. They were considered incidental to the main purpose. On the other hand, exemption was denied with respect to other items, which formed part of the airport premises, including a house and garage occupied by the manager as a residence, together with 1.06 acres of land on which the house and garage were located, and a residence occupied by a serviceman and his garage. It is interesting to note that a barn which was a part of the three-structure unit which included the serviceman’s residence and garage was considered exempt because it was used for storage of tools used on the airport. ••
The facts of the instant case are manifestly different from those in the Toledo case, supra. The storage of grain in large metal bins 18 feet in height cannot, as we see it, be considered incidental to the operation *371 of an airport. The purpose of the utility, to wit, operation of the airport, is not thereby subserved. On the contrary, it is reasonable to conclude that the presence of 130 such structures in an area of 14.42 acres is wholly inconsistent with any possible use of that area for airport purposes. Certainly an emergency landing could not be made in that area.
Furthermore, the leasing by appellant of the area in question is inconsistent with the claim of use for a public purpose. In argument appellant’s counsel asserted that the rental is merely nominal and of no controlling importance. The record is silent as to what a reasonable rental would be and it is also silent as to the physical characteristics of the area. We must, therefore, conclude that $180 per year, which is approximately $12 per acre, is substantial and constitues fair rental for this vacant and unimproved land. The appellant does not use the area. It is used by a tenant.
In this connection appellant claims that in the Toledo case,'supra, the acreage, not occupied by runways, was sowed with alfalfa which was cut and sold on the market and that such use did not prevent exemption from taxation. Appellant says that the Dayton land is used to store grain; that the Toledo land was used to grow alfalfa; and that money was received by the owner in both instances. Appellant urges that the situations are identical in principle. That argument overlooks the facts that in the Toledo case the city did not part with possession of or control over the land sowed to alfalfa, that it chose to grow alfalfa rather than weeds — as Judge Williams suggested— and that the growing of alfalfa did not in any way interfere with use of the land for airport purposes.
We now turn to the claim of appellant that storage of grain on the premises by an instrumentality of the federal government is a use for a public purpose, which, coupled with appellant’s public ownership, *372 satisfies the exemption requirements. We are not called upon to characterize the use made of the premises by the Montgomery County Agricultural Conservation Association or the Commodity Credit Corporation or any other agency of the federal government. The use made by such agency is not a use by appellant. The United States Government, acting through one or more of its agencies or instrumentalities, is the tenant of appellant, paying an annual rental for the privilege of use. Appellant has devoted this property to commercial use as much as though the rental were several times that stipulated in the lease.
To satisfy the requirements of that portion of Section 5351, General Code, here involved, the user of the property and the owner thereof must coincide, that is, the use for a public purpose must be such that it may be considered as use by the one whose ownership constitutes the property public property. Under the facts of this case that requirement is not satisfied.
The law is well settled that property to be exempt from payment of taxes must come squarely within the exemption provisions of the law. In Re Estate of Taylor, 139 Ohio St., 417, 40 N. E. (2d), 936; Crown Hill Cemetery Assn. v. Evatt, Tax Commr., 143 Ohio St., 399, 55 N. E. (2d), 660.
Appellant has not established a right to exemption. The decision of the Board of Tax Appeals is affirmed.

Decision affirmed.

Wbygandt, C. J., Matthias and Hart, JJ., concur.
Zimmerman, Stewart and Tart, JJ., dissent.