American Chemical Society, Appellee, *v.*
Kinney, Commr., Appellant.

[Cite as American Chemical Soc. v. Kinney (1980),
62 Ohio St. 2d 258.]

(No. 79-1151—Decided May 28, 1980.)

*Messrs. Bricker & Eckler, Mr. William R. Chadeayne* and *Mr. Jerry E. Nathan,* for appellee.

*Mr. William J. Brown,* attorney general, and *Mr. Charles M. Steines,* for appellant.

CELEBREZZE, C. J.   R. C. 5709.07 states in relevant part:

"Public schoolhouses and houses used exclusively for public worship, the books and furniture therein, and the ground attached to such buildings necessary for the proper occupancy, use, and enjoyment thereof, and not leased or otherwise used with a view to profit, public colleges and academies and all buildings connected therewith, and all lands connected with public institutions of learning, not used with a view to profit shall be exempt from taxation."

The issue before this court is whether the use made by Chemical Abstracts of the facilities which the parcels in question adjoin make it a public institution of learning for the purposes of R. C. 5709.07.

Appellee argues that the term "public institution of learning" must be broadly construed to include organizations such as Chemical Abstracts. It contends that because every term in a statute is presumed to have some effect, the term "public institution of learning" must be interpreted to have some meaning separate and distinct from the meanings of the terms public schoolhouses, colleges, and academies. This meaning, it is contended, includes the informational publishing work of Chemical Abstracts.

Under the construction urged by appellee, "public institution of learning" must either be construed to include but be broader than colleges and academies or it must be viewed as being totally separate and distinct from those terms. Either construction produces an unreasonable result: some or all public institutions of learning, those that are not colleges or academies, would be granted exemptions for land connected with their buildings when no exemption is granted to the buildings themselves. It is presumed that the General Assembly does not intend to enact laws producing unreasonable or absurd consequences. *Canton* v. *Imperial Bowling Lanes* (1968), 16 Ohio St. 2d 47, paragraph four of the syllabus. "Public institution of learning" cannot be construed as having a meaning separate and distinct from colleges and academies in the absence of some strong indication of legislative intent to the contrary.

Ordinarily, words in statutes are to be given their common, ordinary, and accepted meaning. *State* v. *Singer* (1977), 50 Ohio St. 2d 103, 108. This court has discussed the meaning of the term "institution of learning" as it relates to publishing houses in the case of *In re Estate of Taylor* (1942), 139 Ohio St. 417. An exemption from the state inheritance tax granted to bequests to "institution[s] of learning" was construed therein. This court refused to allow a Bible publishing house the exemption, quoting, at page 420, from the trial court's opinion as follows:

" 'An institution of learning must at least embrace the idea of someone, possessed of knowledge and skill, capable of and in a position to impart such knowledge and skill to others in position to and capable of learning them. An institution whose sole purpose is to publish books and distribute them does not seem to be in any sense of the term, an institution of learning.' " This definition of "institution of learning," which parallels the meaning of "colleges and academies," is still the common, ordinary, and accepted meaning of that term today, and because there is no indication of contrary legislative intent, we must use this definition in interpreting the statute, especially considering the potential unreasonable result of any other construction.

In enacting R. C. 5709.07 the General Assembly has pro-

vided exemptions for two different types of uses. The first exemption is granted to public schoolhouses and houses used exclusively for public worship and it is given to the buildings involved in that pursuit and such land as is necessary for the proper use and enjoyment of the buildings. The second exemption is granted to public colleges and academies which are also referred to as public institutions of learning. This exemption is for buildings and all lands connected with the institution rather than just land necessary for proper use and enjoyment. To qualify for the second exemption, an institution must have a teacher-student character.

Chemical Abstracts does not qualify as a public institution of learning, although some actual teaching is done at the facility which is then supplemented by the publication and circulation of abstracts. While it may be true that a facility can qualify for the exemption granted public institutions of learning in R. C. 5709.07 even though it is not a college or academy in the traditional sense, Chemical Abstracts is not such an institution. See *Ohio Operating Engrs.* v. *Kinney* (1980), 61 Ohio St. 2d 359, 360, where the commissioner conceded that a facility instructing men and women in the use and maintenance of heavy equipment was such an institution.

The classes offered by appellee to its employees are designed to enable them to prepare abstracts. The classes offered to professors are designed to enable them to use the materials. All the classes are related to the process of disseminating information through published abstracts—as Emerson H. Heilman, the director of business operations at Chemical Abstracts testified, the facility is essentially an informational publishing house. It does not have the teacher-student character required to qualify it as a public institution of learning under R. C. 5709.07.

We hold that an institution which has as its essential purpose the summarizing of chemical research into abstracts which are then sold to interested parties is not a "public institution of learning" as that term is used in R. C. 5709.07. No exemption is available to appellee pursuant to R. C. 5709.07.

The Board of Tax Appeals did not consider appellee's claim for an exemption pursuant to R. C. 5709.12. As a consequence, we reverse the decision of the board regarding the

availability of an exemption under R. C. 5709.07 and remand the cause for disposition of the claim under R. C. 5709.12.

*Decision reversed*
*and cause remanded.*

HERBERT, W. BROWN, SWEENEY and LOCHER, JJ., concur.

P. BROWN and HOLMES, JJ., dissent.

PAUL W. BROWN, J., dissenting. The decision of the Board of Tax Appeals is both reasonable and lawful under R. C. 5709.07, 5709.12 and 5709.121.

HOLMES, J., dissenting. It is my view that Chemical Abstracts reasonably complies with the criteria of what would constitute a "public institution of learning," as that term is used in R. C. 5709.07.

Chemical Abstracts is, in the first instance, a nonprofit organization dedicated to the general advancement of the knowledge of chemistry in all of its branches. The data gathered, abstracted and indexed is made available to those interested throughout the world—in my view, a process of learning of a high order.

In addition to the publishing of the abstracts of chemical data and chemical engineering research, Chemical Abstracts conducts courses in various fields of chemistry, languages and management training for its employees and offers other courses to the professional staff of various universities, all of which add greater weight to the determination that Chemical Abstracts does indeed meet the criteria for a "public institution of learning."

The multifaceted educational activities and services performed by Chemical Abstracts may reasonably be likened to the activities of an academy of learning, rather than likened to a publishing house which was denied exemption in *In re Estate of Taylor* (1942), 139 Ohio St. 417.

I would affirm the decision of the Board of Tax Appeals.