CINCINNATI COMMUNITY KOLLEL, APPELLANT,
*v.* LEVIN, TAX COMMR., APPELLEE.

[Cite as *Cincinnati Community Kollel v. Levin,*
113 Ohio St.3d 138, 2007-Ohio-1249.]

(No. 2006–0365—Submitted September 20, 2006—Decided April 4, 2007.)

PFEIFER, J.

{¶ 1} R.C. 5709.121 provides a tax exemption to certain property owned by charitable or educational institutions. The issue in this appeal is whether a Jewish organization that provides classes and research facilities to several resident scholars, and also offers classes to the Jewish community in Cincinnati, is a "charitable or educational institution" under that statutory provision. We conclude that it is, and we therefore reverse the contrary decision of the Board of Tax Appeals.

## Factual and Procedural Background

{¶ 2} Appellant Cincinnati Community Kollel—an Ohio nonprofit corporation—seeks a real-property tax exemption for the years 1998 through 2002 for two parcels that it owns on Elbrook Avenue in the Hamilton County village of Golf Manor. Each parcel contains one building, and each building is divided into two residential apartments. The apartments are occupied by four students, who study at the kollel's nearby learning center.

{¶ 3} A kollel is an institute for the advanced study of Jewish religious texts. A community kollel combines that mission with the goal of providing adult educational opportunities and outreach events for the Jewish community.

{¶ 4} Rabbi David Spetner—the executive director of the Cincinnati Community Kollel—testified at a hearing in this case before the Board of Tax Appeals ("BTA"), and he explained that his community kollel strives to "educate the Jewish community in which it's situated." The Cincinnati Community Kollel pays four married men a stipend to study Judaism's classic texts in depth, and those men then teach classes to the local Jewish community. The married men—whom Rabbi Spetner described as "staff scholars"—typically stay between two and five years, and then they move on to pursue other academic or professional interests. While the four scholars study at the kollel, they and their families live rent-free in the apartment buildings that are at issue in this case.

{¶ 5} In 2002, the kollel sought an exemption for real property taxes that it owed or had already paid on the two apartment buildings and the land on which they sit for the years 1998 through 2002. The Tax Commissioner denied the exemption, focusing primarily on the residential nature of the buildings in question. (The kollel's worship and learning center has already been granted an exemption from real property taxes under the "public worship" exemption in R.C. 5709.07(A)(2), and that exemption is not at issue in this appeal.)

{¶ 6} The kollel appealed to the BTA, which held a hearing on the matter in June 2005. The BTA affirmed the Tax Commissioner's decision, concluding that the kollel is neither an educational institution nor a charitable institution. The kollel, according to the BTA, provides very little formal teaching activity to local community members, and it does not award degrees to the four staff scholars. As for any charitable activities, the BTA concluded that the kollel does not advance or benefit the public in general, but rather primarily benefits the staff scholars.

{¶ 7} The kollel has filed this appeal of right from the BTA's decision.

## Law and Analysis

{¶ 8} In reviewing a BTA decision, this court looks to see whether that decision was "reasonable and lawful." *Columbus City School Dist. Bd. of Edn. v. Zaino* (2001), 90 Ohio St.3d 496, 497, 739 N.E.2d 783. The court "will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion." *Gahanna–Jefferson Local School Dist. Bd. of Edn. v. Zaino* (2001), 93 Ohio St.3d 231, 232, 754 N.E.2d 789. But "[t]he BTA is responsible for determining factual issues and, if the record contains reliable and probative support for these BTA determinations," this court will affirm them. *Am. Natl. Can Co. v. Tracy* (1995), 72 Ohio St.3d 150, 152, 648 N.E.2d 483.

{¶ 9} Any claimed exemption from taxation "must be strictly construed, and the taxpayer must affirmatively establish a right to the exemption." *Athens Cty. Aud. v. Wilkins*, 106 Ohio St.3d 293, 2005-Ohio-4986, 834 N.E.2d 804, ¶ 8. See, also, R.C. 5715.271 ("the burden of proof shall be placed on the property owner to show that the property is entitled to exemption").

{¶ 10} R.C. 5709.121(A)—the statutory provision on which the kollel relies in claiming a tax exemption—states that "[r]eal property * * * belonging to a charitable or educational institution" may be eligible for an exemption if the property is used in specified ways. Only the kollel's status as a "charitable or educational institution" is at issue in this appeal.

{¶ 11} The court, when examining R.C. 5709.121 and other similar statutes, has described an "institution" as follows:

{¶ 12} " ' "An establishment, especially one of eleemosynary or public character or one affecting a community. An established or organized society or corporation. It may be private in its character, designed for profit to those composing the organization, or public and charitable in its purposes, or educational (*e.g.* college or university)." ' " *Case W. Res. Univ. v. Wilkins*, 105 Ohio St.3d 276, 2005-Ohio-1649, 825 N.E.2d 146, ¶ 15, quoting *Highland Park Owners, Inc. v. Tracy* (1994), 71 Ohio St.3d 405, 407, 644 N.E.2d 284, quoting Black's Law Dictionary (6th Ed.1990) 800.

{¶ 13} The kollel—an Ohio nonprofit corporation—does qualify as an "institution." The meaning of "charitable or educational" in the statute is less certain. This court has, however, considered in other tax cases whether similar entities or activities could rightly be characterized as educational. See, e.g., *Am. Chem. Soc. v. Kinney* (1980), 62 Ohio St.2d 258, 261, 16 O.O.3d 288, 405 N.E.2d 272 (holding that the phrase "public institution of learning" in a tax statute may encompass more than "a college or academy in the traditional sense," but that any such institution must have "a teacher-student character"; therefore, the term could not be applied to an institution that merely summarized others' research and sold the summaries to willing buyers); *Am. Commt. of Rabbinical College of Telshe, Inc. v. Bd. of Tax Appeals* (1947), 148 Ohio St. 654, 36 O.O. 264, 76 N.E.2d 719, paragraph two of the syllabus ("A school which is organized and operated by a religious denomination for the sole purpose of training men in denominational tenets and doctrines and which provides no educational opportunities to the public generally" does not qualify as a tax-exempt "public institution of learning"); *Socialer Turnverein v. Bd. of Tax Appeals* (1942), 139 Ohio St. 622, 623, 23 O.O. 117, 41 N.E.2d 710 (an organization whose avowed purpose was the "physical, mental and moral advancement of its members" that provided gymnasium classes and athletic facilities to its members was not a tax-exempt "public institution of learning," as it was not public and the "learning" it offered was "incidental"); *In re Taylor's Estate* (1942), 139 Ohio St. 417, 419, 22 O.O. 489, 40 N.E.2d 936 ("An institution of learning connotes a teaching staff and students").

{¶ 14} Federal statutes and regulations offer helpful insights on the question of what an "educational institution" is as well. See, e.g., Section 170(b)(1)(A)(ii), Title 26, U.S.Code (contributions to an educational organization are tax deductible if the educational organization "normally maintains a regular faculty and curriculum and normally has a regularly enrolled body of pupils or students in attendance at the place where its educational activities are regularly carried on"); Section 1.170–2(b)(3)(i), Title 26, C.F.R. (the term "educational organization" does not include "organizations engaged in both educational and noneducational activities unless the latter are merely incidental to and growing out of the educational activities").

{¶ 15} From the various Ohio tax cases and the federal tax provisions, we can identify some attributes that ought to be required of any entity that seeks a tax exemption as an "educational institution." Such an institution must be marked by the presence of both students and teachers, offer educational opportunities to the public, involve the transfer of knowledge and skills in one or more structured classes rather than in merely social activities, and have as its primary function the presentation of formal instruction.

{¶ 16} Under that formulation, the Cincinnati Community Kollel has presented sufficient probative evidence that it is indeed an educational institution. The kollel's executive director, Rabbi Spetner, testified at the BTA hearing that the organization's primary aim is an educational one, and the kollel's written constitution states that it "is organized and is to be operated exclusively for charitable and educational purposes." Rabbi Spetner quoted from that constitution when discussing the kollel's mission, explaining that it strives to "provide an environment of Torah study combining the advanced studies of the kollel staff scholars with a venue for community learning." The staff scholars, he explained, "are given the mission of teaching the community around them, at the same time [that they] continue their own studies."

{¶ 17} Rabbi Spetner also testified about the kollel's "many different types of classes that are geared towards giving people the education to know how to pray." The 2003 annual report for the kollel explains that the organization's goal is "to share the beauty of Torah study throughout the Cincinnati Jewish community, and through that, to help each Jew draw closer to his or her Judaism." According to Rabbi Spetner, the "students are members of the Jewish community in Cincinnati, and they can range from elementary school-age children who are coming for enrichment, high school age students, to college, [to] senior citizens. It runs the gamut." The kollel, Rabbi Spetner explained, teaches "Jewish law, Jewish ethics, [and] Jewish history" to the Cincinnati Jewish community, including a course on kosher laws. A daily schedule admitted as an exhibit before the BTA lists a variety of classes offered at the kollel, including "Jewish Civil Law," "Advanced Talmud I," "Ethics," and "Intermediate Hebrew." The name of the instructor and the meeting time for each class are listed on that schedule. At the oral argument before this court, the kollel's attorney also indicated that the classes are open to Jews and non-Jews alike at no cost to the attendees.

{¶ 18} As for the four staff scholars' educational activities, Rabbi Spetner explained that they "probe, study, and analyze the Torah" for six hours each day. The scholars are taught by rabbis at the kollel, and they are tested weekly on the material that they have studied. Most of the staff scholars who have left "have gone on to be teachers and administrators in other educational institutions," according to Rabbi Spetner. And during their years at the kollel, the scholars themselves, he explained, are actively "involved in teaching members of the Jewish community" who visit the kollel's learning center.

{¶ 19} The kollel does not award degrees for the postgraduate advanced studies pursued at the learning center by the staff scholars, and there is no evidence that the community members who attend classes at the center receive degrees or grades for their beginning and intermediate-level studies. Yet as long

as an institution meets the criteria that we have noted above, it meets the standards of an "educational institution" under R.C. 5709.121. The Internal Revenue Service has found that an organization that "maintains no regular curriculum and provides no credits, grades, or degrees" can "advanc[e] education" if it "enabl[es] students and instructors to come together for purposes of instruction on subjects useful to the individual and beneficial to the community." Rev. Rul. 71–413, 1971–2 C.B. 228 (recognizing a federal tax exemption for a nonprofit organization that acted as a clearinghouse and course coordinator, bringing together instructors and students by publishing a bulletin listing scheduled courses for the community).

{¶ 20} We find that the Cincinnati Community Kollel has met its burden of showing that it is indeed an educational institution, and we therefore reverse the BTA's decision to the contrary. In light of our conclusion, we need not address whether the kollel is also a charitable institution. An entity seeking a tax exemption under R.C. 5709.121(A) need only show that it is a charitable "or" educational institution.

{¶ 21} For the reasons explained above, we reverse the BTA's decision. The Cincinnati Community Kollel has presented sufficient probative evidence supporting its claim that it is an educational institution, and the BTA's contrary decision was not reasonable in light of that evidence. We remand the cause so that the BTA can consider whether the purposes for which the kollel uses the apartment buildings qualify those buildings for a property-tax exemption under R.C. 5709.121(A).

Decision reversed<br>and cause remanded.

DONOFRIO, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

MOYER, C.J., dissents.

GENE DONOFRIO, J., of the Seventh Appellate District, was assigned to sit for RESNICK, J., whose term ended on January 1, 2007.

CUPP, J., whose term began on January 2, 2007, did not participate in the consideration or decision of this case.

---

MOYER, C.J., dissenting.

{¶ 22} I respectfully dissent. As the majority notes, " 'if the record contains reliable and probative support for [the] BTA determinations,' this court will affirm them." Majority Opinion at ¶ 8, quoting *Am. Natl. Can Co. v. Tracy*

(1995), 72 Ohio St.3d 150, 152, 648 N.E.2d 483.  I would hold that the Board of Tax Appeals decision was reasonable and lawful and would affirm its decision.

---

Simon Groner, for appellant.

Marc Dann, Attorney General, and Cheryl D. Pokorny, Assistant Attorney General, for appellee.