NEWMAN, AUD., APPELLANT AND CROSS-APPELLEE, *v.* LEVIN, TAX COMMR., APPELLEE AND CROSS-APPELLEE; CINCINNATI GAS & ELECTRIC COMPANY ET AL., APPELLEES AND CROSS-APPELLANTS.

[Cite as *Newman v. Levin*, 120 Ohio St.3d 127, 2008-Ohio-5202.]

(No. 2007–1054—Submitted June 3, 2008—Decided October 9, 2008.)

O'DONNELL, J.

{¶ 1} On this appeal from the Board of Tax Appeals ("BTA"), we are asked to consider whether certain built-in equipment at the J.M. Stuart Electric Generating Station, located adjacent to the Ohio River in Adams County, is exempt from taxation as a thermal-efficiency improvement pursuant to former R.C. 5709.46. The Adams County auditor, Carroll E. Newman, has appealed from a decision of the BTA that affirmed the Tax Commissioner's decision to exempt from taxation four types of equipment installed at the generating station, which is jointly owned by the Cincinnati Gas & Electric Company, Dayton Power & Light Company, and

Columbus Southern Power Company. The utilities have cross-appealed from the portion of the BTA's decision that reversed the Tax Commissioner's exemption for another piece of equipment installed at the plant.

{¶ 2} For the following reasons, we affirm the decision of the BTA with respect to the auditor's appeal but reverse with respect to the utilities' cross-appeal.

{¶ 3} The J.M. Stuart Electric Generating Station began service in 1969 and came fully online in 1974.

{¶ 4} In *Cincinnati Gas & Elec. Co. v. Kosydar* (1974), 38 Ohio St.2d 71, 72–73, 67 O.O.2d 81, 310 N.E.2d 245, we quoted the BTA's description of the general process by which this station generates electricity:

{¶ 5} " 'J.M. Stuart Station is known as a thermal electric generating station and uses coal as the primary source of the thermal energy. Coal is received by barges on the Ohio River. * * * The coal again is moved by conveyor, chutes and gates to surge bins and then into silos. * * *

{¶ 6} " 'There are six (6) silos for each unit and each silo feeds a coal pulverizer. * * * From the pulverizer the coal is blown by means of the primary air fan through pipes to the furnace or boiler where the coal ignites. * * *

{¶ 7} " 'Steam is produced in the boiler and is piped to drive the turbine. The mechanical energy of the turning turbine is transferred to the generator and electrical energy from the generator goes out over transmission lines to the customers.' "

{¶ 8} The instant matter concerns five types of equipment in the station. Three of these use heat recovered from the hot, spent gasses exiting the combustion chamber: (1) the economizer heats the water entering the boiler, thus reducing the amount of coal necessary to vaporize the water, (2) the preheater warms fresh air entering the combustion chamber, thus promoting faster combustion, and (3) the reheater heats the partially cooled steam exiting the primary turbine in order to drive several lower-pressure turbines. The remaining equipment is related to the steam that exits the turbines: (4) the condenser captures the spent steam, condenses it and returns the demineralized water to the boiler, thus creating a vacuum that assists the flow of steam through the turbines and also reducing the need to demineralize additional fresh water for use in the boiler; and (5) the circulating-water system facilitates condensation by drawing cool water from the river, piping it to the condenser, and then returning the warm water either to the river or to the cooling tower.

{¶ 9} In 2000, the three utilities filed separate applications with the Tax Commissioner for "thermal efficiency improvement" certificates encompassing numerous systems throughout the plant, including the five pieces of equipment described above. Issued pursuant to former R.C. 5709.46, these certificates

provide an exemption from sales, use, real property, and personal property taxation. Former R.C. 5709.50, 137 Ohio Laws, Part II, 2760.

{¶ 10} The Tax Commissioner notified the Adams County auditor of the applications, and former R.C. 5709.47 gave the auditor the right to a hearing before final disposition. In 2001, after review by both the Tax Commissioner and an engineer employed by the Department of Development, the Commissioner awarded the three requested certificates, finding that all of the identified equipment "is designed primarily for thermal efficiency improvement, is suitable and reasonably adequate for such purpose and is intended for such purpose." By granting the certificates, the Tax Commissioner exempted property worth $37,597,696.

{¶ 11} The auditor appealed to the BTA, arguing that the Tax Commissioner should not have issued the certificates for the following reasons: (1) the equipment was part of the original plant design and thus does not qualify as a thermal-efficiency improvement, (2) the equipment was not used exclusively for thermal-efficiency improvement, and (3) the Tax Commissioner lacked jurisdiction to award the certificates because some of the equipment identified in the applications was installed before December 31, 1974, which is the cutoff date specified in former R.C. 5709.46.

{¶ 12} The BTA conducted hearings, and experts for both the utilities and the auditor testified about the design and operation of the equipment. On May 18, 2007, the BTA issued a decision that affirmed the exemptions with respect to the economizer, preheater, reheater, and condenser equipment but that reversed the exemption for the circulating-water system. The BTA further ordered the Tax Commissioner to remove the tax exemption for all other equipment identified in the utilities' applications that had been installed before December 31, 1974.

{¶ 13} The auditor and the Tax Commissioner both appealed to this court from the BTA's determination that the economizer, preheater, reheater, and condenser are exempt from taxation pursuant to former R.C. 5709.46. We dismissed the Tax Commissioner's appeal, however, because he was not aggrieved by a decision that affirmed his administrative determination. 116 Ohio St.3d 1205, 2007-Ohio-5507, 876 N.E.2d 960.

{¶ 14} In his appeal, the auditor advances three main arguments for our review. First, he contends that the Tax Commissioner lacked jurisdiction to issue certificates because the utilities' applications included some equipment that was installed before December 31, 1974, in violation of former R.C. 5709.46. Second, the auditor asserts that the utilities failed to prove that the equipment recovers waste heat or steam or that the primary purpose of the equipment is to improve thermal efficiency. Finally, he claims that the BTA should have applied

a strict-scrutiny standard of review and viewed the evidence "most strongly against the tax exemption request."

{¶ 15} The utilities respond that the Tax Commissioner had jurisdiction to issue certificates exempting some of the requested equipment, even though other pieces of equipment were ineligible for exemption. They next contend that this court lacks jurisdiction to review the auditor's claims on the merits because the auditor did not properly raise those issues on appeal to the BTA or on appeal to this court. Finally, the utilities assert that the BTA applied the proper standard of review.

{¶ 16} The utilities also filed a cross-appeal to contest the BTA's determination that the circulating-water system does not qualify for an exemption. They contend that the evidence does not support the BTA's decision, while the auditor argues that the record does support the BTA's decision in this regard.

### The Auditor's Appeal

{¶ 17} The auditor presents three propositions of law for our review. In the first, the auditor asserts, "The Tax Commissioner and Board of Tax Appeals have no jurisdiction to consider a tax exemption application that 'relates to facilities upon which construction was completed on or before December 31, 1974.'"

{¶ 18} Former R.C. 5709.46 stated, "The effective date of the [thermal-efficiency-improvement] certificate shall be the date of the making of the application for such certificate or the date of the construction of the facility, whichever is earlier, provided such application shall not relate to facilities upon which construction was completed on or before December 31, 1974." 137 Ohio Laws, Part II, 2758. Former R.C. 5709.45(D) defined "thermal efficiency improvement facility" as "any property or equipment designed, constructed, or installed in a commercial building or site or in an industrial plant or site for the primary purpose of thermal efficiency improvement."[1] Id. at 2757.

{¶ 19} Former R.C. 5709.46 limits certification to "thermal efficiency improvement facilities," as defined by former R.C. 5709.45(D), that were completed after December 31, 1974. Nothing in these statutes, however, bars the Tax Commissioner from issuing a certificate for equipment installed after that date when the application erroneously includes a request for certification of other equipment installed before the cutoff date.

{¶ 20} In this case, the utilities identified the installation date for each piece of equipment in the application for certification, and there was no possibility that

---

1. The General Assembly repealed R.C. 5709.45 through 5709.52 in 2003 but established similar exemptions at R.C. 5709.20 through 5709.27. 2003 Am.Sub.H.B. No. 95, 150 Ohio Laws, Part I, 396, Part II, 1844–1855, 2161–2162.

the Tax Commissioner could be misled. And while the Tax Commissioner did erroneously certify equipment that had been installed prior to December 31, 1974, the BTA stated in its decision that "[t]hose items must be removed from exemption."

{¶ 21} We conclude that the presence of some ineligible items on the utilities' applications did not deprive either the Tax Commissioner or the BTA of jurisdiction to certify other items that were eligible for exemption. Thus, this proposition is not well taken.

{¶ 22} In the second proposition of law, the auditor challenges the BTA's conclusions that the economizer, preheater, reheater, and condenser improve thermal efficiency and qualify as thermal-efficiency-improvement facilities pursuant to former R.C. 5709.45.

{¶ 23} Former R.C. 5709.45(C) defines "thermal efficiency improvement" as "recovery and use of waste heat or waste steam produced incidental to electric power generation, industrial process heat generation, lighting, refrigeration, or space heating." Equipment qualifies as a "thermal efficiency improvement facility" only if it has the "primary purpose of thermal efficiency improvement." Former R.C. 5709.45(D). An exemption from taxation pursuant to former R.C. 5709.46 does not apply unless the equipment satisfies both requirements.

{¶ 24} These two requirements present related but different issues. For example, a piece of equipment might have the primary purpose of recovering and using waste heat without actually fulfilling that purpose, while another piece of equipment might recover and use waste heat without having the primary purpose of doing so. We therefore consider the auditor's two claims separately.

{¶ 25} Although the auditor has argued before both this court and the BTA that none of the equipment at issue recovers and uses waste heat, none of the specifications of error in the auditor's notice of appeal to the BTA concern waste heat. Instead, the auditor's specifications of error concerned only the second requirement: that the equipment has the primary purpose of improving thermal efficiency.

{¶ 26} The jurisdiction of the BTA is limited to errors specified in the notice of appeal. As we stated in *Cousino Constr. Co. v. Wilkins,* 108 Ohio St.3d 90, 2006-Ohio-162, 840 N.E.2d 1065, ¶ 41, "[f]or more than 50 years, this court's decisions interpreting the specificity requirement of R.C. 5717.02 have made clear that a notice of appeal filed with the BTA must explicitly and precisely recite the errors contained in the Tax Commissioner's final determination." See also *Satullo v. Wilkins,* 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 23; *Cleveland Elec. Illum. Co. v. Lindley* (1982), 69 Ohio St.2d 71, 75, 23 O.O.3d 118, 430 N.E.2d 939; and *Lenart v. Lindley* (1980), 61 Ohio St.2d 110, 114, 15 O.O.3d 152, 399 N.E.2d 1222.

{¶ 27} Here, the auditor never identified the issue of waste heat in his specifications of error to the BTA, and therefore the BTA lacked jurisdiction to consider that issue. As a result, we are without jurisdiction to consider it. See *Osborne Bros. Welding Supply, Inc. v. Limbach* (1988), 40 Ohio St.3d 175, 178, 532 N.E.2d 739.

{¶ 28} Similarly, none of the errors raised in the notice of appeal to this court identify the auditor's second claim, that the equipment certified by the Tax Commissioner does not have the primary purpose of improving thermal efficiency. We therefore lack jurisdiction to consider this claim. See *Norandex, Inc. v. Limbach* (1994), 69 Ohio St.3d 26, 31, 630 N.E.2d 329, fn. 1, in which we held that when a litigant fails to raise a particular argument in the notice of appeal to the court, the court "do[es] not have jurisdiction to consider the argument."

{¶ 29} The third proposition of law asserts that the BTA applied the wrong standard of review when it considered the evidence before it. According to the auditor, "[a] strict scrutiny test must be applied in which evidence is viewed most strongly against the tax exemption request." He further claims that the BTA had no evidence on which to affirm the decision of the Tax Commissioner.

{¶ 30} The taxpayer's burden in seeking a tax exemption from the Tax Commissioner is well established. As we stated in *Cincinnati Community Kollel v. Levin*, 113 Ohio St.3d 138, 2007-Ohio-1249, 863 N.E.2d 147, "[a]ny claimed exemption from taxation 'must be strictly construed, and the taxpayer must affirmatively establish a right to the exemption.'" Id. at ¶ 9, quoting *Athens Cty. Aud. v. Wilkins*, 106 Ohio St.3d 293, 2005-Ohio-4986, 834 N.E.2d 804, ¶ 8. See also R.C. 5715.271 ("the burden of proof shall be placed on the property owner to show that the property is entitled to exemption"). Moreover, we have held that statutes governing tax exemptions should be strictly construed against the claim of exemption. See *H.R. Options, Inc. v. Wilkins*, 102 Ohio St.3d 1214, 2004-Ohio-2085, 807 N.E.2d 363, ¶ 2; *Natl. Tube Co. v. Glander* (1952), 157 Ohio St. 407, 47 O.O. 313, 105 N.E.2d 648, paragraph two of the syllabus.

{¶ 31} However, once the Tax Commissioner grants or denies an exemption, the burden of proving that the Tax Commissioner erred rests on the party appealing to the BTA. In *Hatchadorian v. Lindley* (1986), 21 Ohio St.3d 66, 69, 21 OBR 365, 488 N.E.2d 145, at paragraph one of the syllabus, we stated, "The Tax Commissioner's findings are presumptively valid, absent a demonstration that those findings are clearly unreasonable or unlawful." See also *Nusseibeh v. Zaino*, 98 Ohio St.3d 292, 2003-Ohio-855, 784 N.E.2d 93, ¶ 10.

{¶ 32} In this case, the Tax Commissioner granted a tax exemption pursuant to former R.C. 5709.46, finding that the utilities had satisfied their burden of proof. On appeal to the BTA, the auditor had the burden of proving that the Tax

Commissioner's determination was "clearly unreasonable or unlawful," and the BTA's decision reveals that it applied the proper standard of review.

{¶ 33} Although the auditor's third proposition of law also includes arguments that the BTA lacked sufficient evidence to make any conclusions regarding the primary purpose of the utilities' equipment, we have already stated that we lack jurisdiction to review the merits of the BTA findings because the auditor failed to identify them in the notice of appeal. Thus, we decline to address the same arguments within the context of his third proposition of law concerning whether the BTA applied the proper standard of review.

{¶ 34} Finally, we recognize that the BTA considered an issue raised by the Tax Commissioner concerning whether the exemption pursuant to former R.C. 5709.46 applies to replacement equipment. Here, most if not all of the equipment identified in the utilities' applications merely replaced identical equipment that had been installed before December 31, 1974, the statutory cutoff date. The BTA rejected the commissioner's argument that the replacement equipment did not qualify for exemption because the original equipment would not have qualified.

{¶ 35} We do not address this issue, however, because the Tax Commissioner has been dismissed from this appeal and because the auditor failed to raise the issue in his briefs and, in fact, expressly abandoned it during oral argument. Thus, because the time bar imposed by former R.C. 5709.46 is a substantive element of the exemption and not a jurisdictional prerequisite, it can be waived by the parties. See *E. Liverpool v. Columbiana Cty. Budget Comm.*, 116 Ohio St.3d 1201, 2007-Ohio-5505, 876 N.E.2d 575, ¶ 3, citing *Household Fin. Corp. v. Porterfield* (1970), 24 Ohio St.2d 39, 46, 53 O.O.2d 22, 263 N.E.2d 243.

{¶ 36} Accordingly, we affirm the decision of the BTA with respect to the appeal filed by the auditor.

## The Utilities' Cross–Appeal

{¶ 37} The utilities also filed a cross-appeal, asserting that the BTA erred when it determined that the circulating-water system does not qualify for an exemption pursuant to former R.C. 5709.46. In *Howard v. Cuyahoga Cty. Bd. of Revision* (1988), 37 Ohio St.3d 195, 197, 524 N.E.2d 887, we reiterated that the standard of review is whether the decision of the BTA is reasonable and lawful. We further stated in *Ameritech Publishing, Inc. v. Wilkins*, 111 Ohio St.3d 114, 2006-Ohio-5337, 855 N.E.2d 440, that " '[t]he BTA is responsible for determining factual issues and, if the record contains reliable and probative support for these BTA determinations,' this court will affirm them." Id. at ¶ 5, quoting *Am. Natl. Can Co. v. Tracy* (1995), 72 Ohio St.3d 150, 152, 648 N.E.2d 483.

{¶ 38} The process of generating electricity at the Stuart plant involves at least two distinct water systems. First, there is a main water system, comprising

several subsystems, that conveys demineralized water to the boiler to be heated into steam, which then drives the turbines that generate electricity. After leaving the turbines, the water returns to a liquid state in the condenser, and the water is directed back to the boiler. Second, there is the circulating-water system, which draws water from the river and pipes it to the condenser, where it helps cool the steam exiting the turbines; afterward, the circulating-water system returns the warm water from the condenser to the river or to the cooling tower. Importantly, the water flowing through the main water system comes in close proximity to, but never mixes with, the water in the circulating-water system.

{¶ 39} In its decision, the BTA confused these systems when it concluded that the circulating-water system does not qualify for an exemption because "there is no recapture of waste heat and waste steam in the demineralization process." As the record demonstrates, however, the demineralization process is associated with the *main* water system but has nothing to do with the *circulating*-water system.

{¶ 40} Furthermore, the BTA erroneously stated that the utilities had disclaimed any exemption for the circulating-water system in their applications. While the applications included a narrative that listed the circulating-water system with other pieces of equipment for which the utilities were *not* seeking exemption, the testimony before the BTA demonstrates that this was merely an oversight. Moreover, other parts of the utilities' applications specifically claimed an exemption for the circulating-water system, the engineer hired by the Tax Commissioner recommended exempting the circulating-water system, and the Tax Commissioner had accepted this recommendation.

{¶ 41} We stated in *Polaris Amphitheater Concerts, Inc. v. Delaware Cty. Bd. of Revision,* 118 Ohio St.3d 330, 2008-Ohio-2454, 889 N.E.2d 103, ¶ 18, that we are required to reverse the decision of the BTA "if the record does not support, or if it contradicts, the BTA's findings." Here, the BTA's decision to deny an exemption for the circulating-water system rests on findings that are unsupported and contradicted by the record. Thus we reverse.

{¶ 42} We next consider whether the circulating-water system is entitled to exemption pursuant to former R.C. 5709.46.

{¶ 43} The evidence before the BTA establishes that the circulating-water system is an integral part of the condenser, which the BTA has determined is exempt from taxation. Steam passes from the turbine to the condenser, where it passes around pipes that are carrying cool water from the river as part of the circulating-water system. The steam returns to a liquid state, creating a vacuum. This vacuum lowers the backpressure on the turbine, thus increasing the efficiency of the turbine and reducing the amount of fuel necessary to generate electricity. The only evidence before the BTA is that the condenser depends on, and could not function without, the circulating-water system. Moreover, Dr.

Abdur Rahim, whom the Tax Commissioner hired to review the utilities' applications, treated the condenser and the circulating-water system as two halves of the condensing section, and he approved of the composite fuel-savings calculations that the utilities had provided with their applications.

{¶ 44} Based on the record, we conclude that the Tax Commissioner did not unreasonably or unlawfully exempt the circulating-water system. Thus, the cross-appeal is sustained, and we reverse the decision of the BTA in that respect.

## Conclusion

{¶ 45} Accordingly, the auditor's first and third propositions of law lack merit, and we lack jurisdiction to consider the merits of his second proposition. We therefore affirm the decision of the BTA with respect to the appeal filed by the auditor. We further determine that the record does not support the BTA's decision to deny an exemption for the circulating-water system pursuant to former R.C. 5709.46. Thus, we sustain the cross-appeal and reverse the decision of the BTA in this regard.

Decision affirmed in part
and reversed in part.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, LANZINGER, and CUPP, JJ., concur.

PFEIFER, J., concurs in judgment only.

---

David C. DiMuzio, Inc., and David C. DiMuzio, for appellant and cross-appellee.

Nancy Hardin Rogers, Attorney General, and Lawrence D. Pratt, Assistant Attorney General, for appellee and cross-appellee, Tax Commissioner of Ohio.

Vorys, Sater, Seymour & Pease, L.L.P., Anthony L. Ehler, and Jeffrey Allen Miller, for appellees and cross-appellants, Cincinnati Gas & Electric Company, Dayton Power & Light Company, and Columbus Southern Power Company.